**Michael Pijanowski, OSB #004426**
mpijanowski@oregonlawcenter.org
**Leslea Smith, OSB #853324**
lsmith@oregonlawcenter.org
**Spencer Neal, OSB #772860**
mneal@oregonlawcenter.org
**Edward Johnson, OSB #965737**
ejohnson@oregonlawcenter.org
OREGON LAW CENTER
230 NE Second Ave, Suite F
Hillsboro, OR 97124
Phone: (503) 640-4115
Fax: (503) 640-9634

Of Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TRINKA A. TURNER, JUNEA R. MURPHY, and JENNIFER L. JUNKINS, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS VILSACK, Secretary of the Department of Agriculture; DOUGLAS O'BRIEN, Acting Undersecretary for Rural Development; RICHARD DAVIS, Acting Administrator Rural Housing Service; and VICKI L. WALKER, Oregon RD State Director,<br><br>Defendants. | Case No. 3:13-cv-01900 SI<br><br>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION |

## INTRODUCTION

Plaintiffs seek a preliminary injunction prohibiting Defendants from conducting a non-judicial foreclosure sale of Plaintiffs' apartment building, Jandina Park Apartments (Jandina), until such time as they have met their due process obligations to existing tenants and complied with program statutes, regulations and agency directives protecting existing tenants from displacement and likely homelessness. The non-judicial foreclosure sale is currently scheduled for November 21, 2013.

Jandina is a 36 unit apartment building that is part of the Rural Development (RD) multifamily housing portfolio. The project is financed, subsidized and operated by the United States Department of Agriculture (USDA) and is located in McMinnville, Yamhill County, Oregon. The RD program is governed by federal law and regulations. (Complaint ¶17). Tenants living in RD projects have heightened procedural rights compared to tenants in private rental housing. (Complaint ¶¶35-37).

Plaintiffs' complaint alleges that Defendants violated Plaintiffs' right to due process of law under the Fifth Amendment of the United States Constitution and under 42 U.S.C. § 1480(g) by intending, through foreclosure, to terminate their right to receive federal Interest Credit and Rental Assistance subsidies and their right to continue to reside at Jandina without adequate notice or opportunity to contest termination of their benefit. (Complaint ¶37). Plaintiffs' complaint also alleges that Defendants violated federal laws governing the Rural Development section 515 subsidized housing program by: (1) failing to adequately assist tenants in avoiding displacement by obtaining safe, decent, and affordable housing prior to removing Jandina from the RD program through the foreclosure; and (2) by failing to follow program statutes and


Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

directives that require the property to be maintained as program property if possible. (Complaint ¶¶35-36).

## STATEMENT OF FACTS

Plaintiffs are all very low-income residents of Jandina who receive Interest Credit and Rental Assistance subsidies through USDA. The subsidies enable Plaintiffs to live in Jandina without paying more than 30 percent of income for rent and utilities. These subsidies are not portable except when the residents move to another RD financed project. Low income housing units in Yamhill County have infrequent vacancies and long waiting lists, such that plaintiffs cannot readily find housing in RD financed projects or elsewhere. (Trinka Turner Decl. ¶10, Jennifer Junkins Decl. ¶9)

Plaintiff Junea Murphy, has lived in her home at Jandina, 1750 SW Sesame St., #34, McMinnville, Oregon since October, 2012. (Junea Murphy Decl. ¶3). Ms. Murphy is a very low-income mother of two young children, age 3 and age 9 months. (Murphy Decl. ¶2). Ms. Murphy is unable to afford conventional market rent housing in the McMinnville area. (Murphy Decl. ¶7).

Plaintiff Trinka Turner has lived in her home at Jandina Park for seven months. (Trinka Turner Decl. ¶3). Ms. Turner is a low-income mother of two children, ages 16 and 11. She has recently obtained custody of her children from Washington Department of Social and Health Services after obtaining stable housing. (Turner Decl. ¶4). Prior to moving in at Jandina Park, Ms. Turner was denied custody because she did not have stable housing. (Turner Decl. ¶4). Because of the very limited affordable housing options available, it took her a year to find suitable, stable housing for her and her children. (Turner Decl. ¶10). The loss of her subsidized


Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

unit at Jandina could result in her losing custody of her children again. (Turner Decl. ¶7). Ms. Turner is not able to afford market rate rental housing in the McMinnville area, even temporarily. (Turner Decl. ¶14).

Plaintiff Jennifer Junkins has lived at Jandina Park for 8 years. (Jennifer Junkins Decl. ¶3). She is a caregiver for another tenant in the building, although her job is ending October 31. (Junkins Decl. ¶4). Ms. Junkins' income is less than the monthly market rent for her apartment, which is $990.00. (Junkins Decl. ¶9). Without the subsidy, she cannot afford decent, safe housing in the McMinnville area. (Junkins Decl. ¶9). She could not pay a new security deposit if a new owner demanded one. (Junkins Decl. ¶9).

Although RD has made some attempts to provide information to Plaintiffs and other tenants, those attempts have been cursory and without real substance. On or about August 30, 2013, Defendants sent notice to Jandina tenants that a meeting would be held on September 3, 2013 to provide more information about the foreclosure. (Junkins Decl. ¶7). The meeting was held as scheduled from approximately 4:00 PM to approximately 6:00 PM and was led by representatives of RD. During the meeting, Plaintiffs were given some information about Letters of Priority Entitlement (LOPE) and RD vouchers. (Junkins Decl. ¶7). Plaintiffs were told that RD would submit a bid at the foreclosure sale but that a third party may outbid the agency, thus eliminating its control over Jandina and terminating the agency's current subsidies to the Plaintiffs. (Declaration of Michael Pijanowski, ¶4). They also advised the Plaintiffs that if a third party purchased Jandina, that Plaintiffs would not receive any significant assistance in locating other housing and that they could not obtain LOPEs or RD vouchers until after the sale had been completed. (Pijanowski Decl. ¶4). Defendants did not advise the Plaintiffs that, as


Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

residents of housing that is managed under the control of RD, Plaintiffs had rights under the Constitution and federal laws and regulations to appeal the loss of their subsidized housing. (Pijanowski Decl. ¶4).

On September 20, 2013, RD sent out a notice of foreclosure sale to tenants that also included some information about post-foreclosure assistance. (Turner Decl. ¶13) The notice did not give any information about tenants' rights to appeal the foreclosure or loss of their subsidies. (Exhibit A to Junkins Decl.) The notice contained a website link for an RD website purporting to list other RD properties but did not contain any significant information about other sources of affordable housing in the area or offer assistance in locating new housing. *Id.* The notice was confusing and Plaintiffs were unable to understand most or all of what was in the notice. (Turner Decl. ¶13, Murphy Decl. ¶9, Junkins Decl. ¶8).

The foreclosure sale has been postponed twice. The initial foreclosure sale date had been set for September 5, 2013. On August 27, 2013, Plaintiffs' attorney wrote to Tom Vilsack, Secretary of USDA, to inform him of Plaintiffs' concerns regarding the legality of the foreclosure sale and to request postponement of the September sale date. (Pijanowski Decl. ¶2). On August 30, 2013, Plaintiffs' attorneys were notified that the sale would be postponed until October 17, 2013. (Pijanowski Decl. ¶3).

On September 12, 2013, Counsel for Plaintiffs wrote to Rod Hansen, RD Housing Programs Director for USDA in Oregon seeking information about what steps RD had taken to meet their legal obligations to tenants at Jandina. (Pijanowski Decl. ¶5; Exhibit A to Pijanowski Decl.). On October 1, 2013, Mr. Hansen wrote back, answering some questions, offering partial answers to some questions and refusing to answer others. (Pijanowski Decl. ¶5; Exhibit B to


Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

Pijanowski Decl.). As part of his response, Mr. Hansen confirmed that "A determination has been made that there may not be sufficient available alternative housing (comparable units with rental assistance or HUD Section 8) and the proposed use of the project may increase the rents which will result in a rent overburden for most tenants." (Exhibit B to Pijanowski Decl. at ¶8). Further, he stated that RD was prepared to bid $728,466 at the October 17th foreclosure sale. (*Id* at ¶17).

On the day of Mr. Hansen's response to Plaintiffs, October 1, 2013, the federal government shut down. All of the RD staff with whom Plaintiffs' counsel were communicating were furloughed and Plaintiffs were unable to secure clarification of Mr. Hansen's response or obtain additional information about RD's actions to fulfill obligations to the tenants at Jandina. (Pijanowski Decl. ¶6).

Prior to receiving Mr. Hansen's response, Plaintiffs' counsel wrote to Defendant Rich Davis, on September 24, 2013, asking for another postponement of the foreclosure sale to give RD additional time to assist tenants in locating safe and decent housing prior to the sale and comply with statutory, regulatory and handbook obligations designed to retain Jandina as RD program property if possible. (Pijanowski Decl. ¶7). Plaintiffs have not received a response to their September 24 request for postponement. However, the second sale, scheduled for October 17, 2013 was postponed because of the continuing government shutdown.

Plaintiffs' counsel have requested a meeting with Defendants to determine if agreement can be reached regarding additional tenant assistance and whether alternatives to foreclosure exist that would preserve Jandina as program or low income property. Defendants' declined to schedule such a meeting prior to the filing of Plaintiffs' lawsuit and motion for preliminary


Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

injunction. (Pijanowski Decl. ¶8).

## LEGAL ARGUMENT

### A. The court has authority to issue a Preliminary Injunction in this case.

This Court has broad discretion to grant injunctive relief, including preliminary injunctions. Fed. R. Civ. P. 65. A preliminary injunction in this case will maintain the *status quo* so the Court has sufficient time to consider the merits of Plaintiffs' claims, which is the purpose of a preliminary injunction. *Univer. of Texas v. Camenish,* 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed2d 175 (1981).

In deciding whether to grant this motion, the Court must balance the following factors: (1) the likelihood of plaintiffs' success on the merits; (2) the threat of irreparable harm to the Plaintiffs if the injunction is not imposed; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest is served by the injunction. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't. of Ag.*, 415 F.3d 1078, 1092 (9th Cir. 2005).

Alternatively, the Ninth Circuit has held, following *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), that the trial court may grant a preliminary injunction "when a plaintiff demonstrates…that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 2011, U.S. App. LEXIS 1473, *10-11, *20-21 (9th Cir. 2011) (citations omitted). The factors are evaluated on a sliding scale so that a stronger showing of one factor may offset the weaker showing of another. This


Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

means a stronger showing of success on the merits could offset a lesser showing of irreparable harm, or the greater the relative hardship, the less possibility of success must be shown. *Int'l. Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993). Plaintiffs are not required to show they will succeed on the merits, but need only prove they have a reasonable chance of success. *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991).

Under either test, Plaintiffs meet their burden.

**B. Plaintiffs will suffer irreparable injury if relief is not granted.**

Plaintiffs will suffer irreparable injury if relief is not granted in this matter. "It is well-established that the loss of an interest in [rental] property constitutes an irreparable injury." *Park Village Apt. Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011). Plaintiffs rely on their current RD subsidies to maintain safe and decent housing, and are unable to afford housing in the private market. If Jandina is sold at the foreclosure sale, Plaintiffs will lose current RD subsidies, may lose the right to remain in Jandina, and few, if any, Plaintiffs will be able to relocate to other RD subsidized housing in the area on a timely basis. Any subsidies that Plaintiffs may secure from RD, such as RD vouchers to either remain in Jandina or relocate to other housing, are not comparable to the Rental Assistance subsidy that they are currently receiving. Because none of the Plaintiffs have sufficient income or resources to rent market rate housing, they may be forced into homelessness.

In addition, Plaintiff Turner risks not being able to retain custody of her children. (Turner Decl. ¶7). Further, once the foreclosure sale is completed it becomes much more difficult for Plaintiffs to challenge the loss of their property interest because the purchaser is likely to assert that it is a *bona fide* purchaser having purchased Jandina in good faith without


Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

prior notice of Plaintiffs' claims.

Defendants have conceded in writing that plaintiffs are likely to suffer such harm. "A determination has been made that there may not be sufficient available alternative housing (comparable units with rental assistance or HUD Section 8) and the proposed use of the project may increase the rents which will result in a rent overburden for most tenants." (Exhibit B to Pijanowski Decl. at ¶8).

**C. Plaintiffs are likely to prevail on their case at trial.**

Plaintiffs are challenging Defendants' failure: (1) to limit their displacement as required by federal statute; (2) to assist them in obtaining other affordable housing prior to proceeding with the foreclosure sale as required by agency guidance; and (3) to provide them with due process of law prior to depriving them of a fundamental property interest.

Congress has charged Defendants with administering the RD programs in such a manner as to avoid displacing families such as Plaintiffs. "The programs authorized by this title shall be carried out, consistent with program goals and objectives, so that the involuntary displacement of families and businesses is avoided." 42 U.S.C. §1471(g). RD has published handbooks to flesh out its interpretation of the agency's obligations under the statute. RD handbook HB 3-3560 is one such handbook. RD describes the agency rules in this Handbook as follows, "The guidance provided by this handbook is intended to be consistent with all applicable laws, Executive Orders, and departmental regulations, including other Agency regulations." HB 3-3560 ¶1.1 (2/24/05).

According to this program Handbook, RD is required to find substitute housing for Plaintiffs in exactly the scenario it now faces.


Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

> **"If a non-program designation would have an adverse impact on tenants and the project is not economically viable, then the project is not needed. However, the Agency cannot remove the property from the program until the Agency finds affordable and comparable housing for all the tenants."**

HB 3-3560 ¶ 6.5.C.3 (2/24/05)(bold print added). [1]

RD's Handbook is a federal agency's interpretation of the statutes and regulations it administers. As such, it is entitled to deference. An "agency is entitled to further deference when it adopts a reasonable interpretation of regulations it has put in force." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 398 (2008). Such deference is afforded unless the agency's position is "plainly erroneous or inconsistent with the regulation." *Id.* The Ninth Circuit has recognized this deference to agency statements with regard to official statements issued by the Department

---

[1] RD has avoided dealing with its obligation to assist Plaintiffs by not undertaking a formal determination whether Jandina is a non-program or unsuitable property. Its handbook requires it to conduct a suitability or non-program designation analysis when "there are loan repayment or compliance problems with the property and the Agency is considering special servicing, **including** a transfer or **liquidation action**." HB 3-3560 ¶ 6.2 (2/24/05) (emphasis added). If it had undertaken such an analysis, it would be required to provide written notification to the tenants informing them that the Agency is reviewing the project's suitability and would have been required to "hold a meeting with the tenants to explain the implications of a possible non-program designation and explain how the process will proceed." Handbook 3-3560 ¶ 6.7 A (2/24/05). Moreover, it would have required the agency to postpone non-program designation when it will have an adverse impact on residents:

> To implement the determination that a program [sic] is no longer suitable, the State Office must act in a manner to protect the Agency and the property's tenants. The basic steps in the process of designating a property as non-program when there is an adverse impact on tenants are the same as when there is no adverse impact. However, when there is an adverse impact, the Agency will need to take additional measures to ensure that all tenants receive decent, safe and affordable housing. This process of assisting tenants will likely delay the implementation of a non-program designation.

Handbook 3-3560 ¶ 6.9 (2/24/05).

RD has simply circumvented all of these requirements by avoiding the analysis that it is required to make before proceeding to foreclosure.


Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

of Housing and Urban Development (HUD) that are the equivalent to the RD Handbooks for HUD housing programs. *Barrientos et al., v. Morton LLC*, 583 F.3d 1197, 1214 (9th Cir. 2009)(HUD Notice PIH 2009-18 is "entitled to deference, as it is HUD's most recent guidance document."); *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1157 (9th Cir. 2011)(HUD's Section 8 Renewal Policy Guide is an agency interpretation "entitled to a measure of respect under the less deferential *Skidmore* standard.")

Defendants simply have not done what their own official agency directives say they must do. Defendants' assistance in locating affordable and comparable housing for Plaintiffs and their neighbors has been cursory at best. In June of 2013, Plaintiffs were sent a one page letter informing them that they might be eligible to participate in a Rural Development voucher program upon liquidation of Jandina and that more details would be forthcoming. After the initial foreclosure sale had been postponed, Plaintiffs were provided some information about Letters of Priority Entitlement (LOPEs) and RD vouchers but were not provided with any other assistance in locating housing. They were not urged to apply for LOPEs that would enable them to move to other RD financed housing. As a result, when and if they are issued LOPEs, all 36 of the Jandina households may seek to apply for other RD financed housing at the same time. Clearly, even if the plaintiffs are able to stay in Jandina for a short period of time, as RD has concluded, the alternative housing will simply not accommodate them.

Moreover, Plaintiffs have not been assisted by RD in applying for RD vouchers prior to the foreclosure sale, thus delaying their capacity to locate and move to other housing.[2] These

[2] On or about September 22, 2013, the Plaintiffs received a notice from RD about vouchers and LOPES. Unfortunately, the notice is replete with errors, omissions and contains information not readily accessible to persons with limited education or access to the Internet. Specifically, it



Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

actions are contrary to RD handbooks and are otherwise arbitrary and capricious. They violate 42 U.S.C. § 1471(g) and § 701(2) of the Administrative Procedure Act.

Jandina has been operated by RD, as a receiver, since 1996. The Federal Government has been managing and operating the development and the due process protections of Article V of the U.S. Constitution apply to decisions made by the agency that deprive Plaintiffs of important property interests. Plaintiffs are entitled to notice and an opportunity to appeal decisions made by the government to terminate their rent subsidies and their right to continue living in Jandina. By failing to offer Plaintiffs any opportunity to object to the pending sale or to the termination of their subsidies, Defendants have deprived Plaintiffs of a significant property interest without due process of law.

A federally subsidized housing tenant's Constitutional due process rights to notice and an opportunity to be heard prior to losing the protected property interest in their home, as embodied in federal regulations, have long been recognized by the courts. *See, e.g. Escalera v. New York City Hous. Auth.*, 425 F.2d 853 (2d Cir. 1970). "[W]aiver of a right to request a grievance hearing cannot occur where plaintiff was never notified of her right in the first place." *Noble v. Bethlehem Housing Authority*, 617 F. Supp. 248, 251 (E.D. Pa. 1985).

---

misinformed the Plaintiffs that the foreclosure of Jandina had already taken place and that RD subsidies have been terminated. It does not explain whether funding is available for the voucher program or how someone determines its availability. It refers Plaintiffs, not all of whom have access to the internet, to the internet to determine where other RD projects are located. It refers to prepayments and not foreclosures and advises plaintiffs that they are eligible for assistance if they lived in the development on the date of actual prepayment, which is not applicable to Jandina. Conversely, it advises them that they are not eligible for assistance if they moved from the development prior to the prepayment. It also advises the Plaintiffs that they have not submitted certain forms to the agency's contractor including a tenant-signed voucher obligation form and proof of citizenship. In short, this notice is inadequate to advise the Plaintiffs of the assistance to which they may be eligible.


Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

In addition to having been deprived of their constitutional due process rights, the Plaintiffs have also been deprived of their statutory due process right as guaranteed under 42 U.S.C. § 1480(g).

Since Defendants have violated 42 U.S.C. §1471(g), the Due Process Clause of the U.S. Constitution and 42 U.S.C. § 1480(g), Plaintiffs are likely to prevail on the merits of their claims.

**D. The balance of harm in this case tilts sharply in favor of Plaintiffs.**

Plaintiffs face harm that is qualitatively greater than any harm faced by Defendants. In evaluating the balance of hardships, a court must consider the impact that granting or denying a motion of preliminary injunction will have on the respective parties. *Jenson v. Metrosound U.S.A.*, 4 F.3d 819, 827 (9th Cir. 1993). When weighing the equities for injunctive relief, the court should take into consideration the fact that the injury to Defendant, if any, is economic, while the injury to Plaintiffs is the loss of use and enjoyment of their homes and a substantial rent subsidy. *Jewett v. Deerborn Enterprises, Inc.*, 281 Or. 469, 478 (1978). In this case Defendants are being asked to postpone foreclosure sale of the property until such time as they have complied with program statutes and regulations by offering meaningful assistance to Plaintiffs in obtaining substitute housing prior to foreclosure and by providing them a due process appeals procedure to which they are entitled.

Defendants' have operated Jandina in the role of receiver since November 21, 1996. (Exhibit B to Pijanowski Decl. at ¶1). As the agency has operated and managed Jandina for 17 years, additional time will not cause any injury to RD or the Defendants other than an insignificant financial injury.

On the other hand, the looming threat of a foreclosure sale presents serious harm to the


Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

plaintiffs. This tips the balance of hardship sharply towards Plaintiffs. Without a temporary restraining order Plaintiffs will face possible homelessness and other irreparable injury. Adding Plaintiffs' probability of success on the merits to their significant risk of harm tips the scales towards injunctive relief. Where the risk is great, "[i]f the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *State of Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir. 1988); *see also Oakland Tribune Inc. v. Chronicle Publishing Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985)("the required degree of irreparable harm increases as the probability of success decrease").

**E. Granting an injunction furthers public policy.**

Courts should grant preliminary injunctions when it is necessary to stop the violation or likely violation of a federal statute and to further the policy of that statute. The Ninth Circuit has held that federal courts should enter preliminary injunctions when the evidence demonstrates "reasonable cause to believe" that a federal statute has been violated or is about to be violated. *Burlington Northern v. Department of Revenue*, 934 F.2d 1964 (9th Cir. 1991).

The valuable role public housing plays for the lowest-income families cannot be overstated. Congress has charged Defendants with administering their housing programs in a way that minimizes displacement of tenants such as Plaintiffs. 42 U.S.C. §1471(g). It is in the public's interest to assure that the most vulnerable members of our community do not lose this invaluable subsidy without adequate due process and without full compliance with federal laws, regulations, and directives. As discussed above, Plaintiffs have shown that there is reasonable cause to believe that the multiple statutes and regulations governing RD's subsidized housing


Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

program as well as Plaintiffs' due process rights have been violated. Defendants' refusal to postpone the sale in order to provide Plaintiffs' with meaningful assistance in maintaining or obtaining safe, affordable housing has a high potential to cause serious harm to Plaintiffs.

**THE COURT SHOULD NOT REQUIRE A BOND BE POSTED**

Although Fed. R. Civ. P. 65(c) states that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant", federal courts have discretion to waive or limit the bond requirement. *People ex rel. Van de Kamp v. Tahoe Regional Planning Agency*, 766 F 2d 1319, 1325 (9th Cir. 1985). The Court has discretion to dispense with the bond or to request a nominal bond where requiring security would deprive access to judicial review. *Id*. If bonds are required then low-income people, such as Plaintiffs, will not be able to avail themselves of the remedies Congress permitted. In this matter Plaintiffs are not requesting that Defendants forgo the collection of rent, or the ability to conduct day to day management of the property as they have done for 17 years.

Plaintiffs in this matter, all of whom have very low incomes, are unable to pay for a bond in this case. (Murphy Decl. ¶4, ¶6; Turner Decl. ¶8; Junkins Decl. ¶7).

**CONCLUSION**

The Court should grant Plaintiffs' motion for a preliminary injunction because Plaintiffs are facing clear and established irreparable harm while the Defendants will only suffer minor financial hardship. Plaintiff are also likely to prevail on the merits of their case, and an

/ / /

/ / /

/ / /


Oregon Law Center
230 NE Second Ave, Suite F
Hillsboro, Oregon 97124
(503) 640-4115

injunction would further the public interest. As the balance of hardships tips sharply in favor of Plaintiffs they meet the requirements for temporary relief.

DATED this 31st day of October, 2013

By: /s/ Michael Pijanowski
Michael Pijanowski, OSB #00442
Phone: (503) 640-4115
Fax: (503) 640-9634
mpijanowski@oregonlawcenter.org
Of Attorneys for Plaintiffs