**S. AMANDA MARSHALL, OSB # 95347**
United States Attorney
District of Oregon
**SEAN E. MARTIN, OSB #054338**
sean.martin@usdoj.gov
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone:  (503) 727-1010
Facsimile:  (503) 727-1117
       Attorney for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **TRINKA A. TURNER,** *et al.*, | Case No. 3:13-cv-01900-SI |
| Plaintiffs, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| **THOMAS VILSACK,** *et al.*, | |
| Defendants. | |

///

///

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND .................................................................................. 2

STATUTORY, REGULATORY, AND PROGRAM GUIDANCE BACKGROUND ..... 3

I.  The section 515 program ................................................................................ 3

II. The Project Servicing Handbook ..................................................................... 5


LEGAL STANDARD .......................................................................................... 7

ARGUMENT .......................................................................................................... 8

I.  Plaintiffs are unlikely to succeed on the merits of their claims ............................... 8

    A.  Plaintiffs' claims hang on future contingencies that may not occur ............. 8

    B.  The agency's foreclosure decision is committed to agency
        discretion by law ........................................................................................ 9

    C.  Plaintiffs do not establish a likelihood that the agency's foreclosure
        decision was arbitrary and capricious under deferential APA review ........ 10

    D.  Plaintiffs do not establish a likelihood of success on their due
        process claim ............................................................................................ 15

II.  There is no likelihood of irreparable harm .......................................................... 20

III. The balance of hardships is in the agency's favor ................................................. 22

IV. Enjoining the foreclosure sale is not in the public interest ..................................... 24


CONCLUSION ..................................................................................................... 25

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Albany Apartments Tenants' Association v. Veneman*, No. 01-cv-1976, 2003 WL 1571576 (D. Minn. March 11, 2003) ........................................................... 15

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .......................... 7

*Brewer v. Madigan*, 925 F.2d 449 (1st Cir. 1991) ........................................................... 19

*Brown v. U.S. Department of Agriculture*, No. 06-cv-1329, 2006 WL2644925 (M.D. Fla. Sept. 14, 2006) ..................................................................................... 21-22

*Cal Pharmacists Association v. Maxwell-Jolly*, 563 F.3d 847 (9th Cir.2009)................. 20

*Center for Environmental Law and Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000 (9th Cir. 2011), *quoting* 5 U.S.C. § 706 (2)(A) .......................................... 10

*DBSI/TRI IV Limited Partnership v. United States*, 465 F.3d 1031 (9th Cir. 2006).......... 8

*Escalera v. New York City Housing Authority*, 425 F.2d 853 (2d Cir.) ........................... 17

*Heckler v. Chaney*, 470 U.S. 821 (1985)........................................................................... 9

*Independent Living Ctr., So. Cal. v. Maxwell-Jolly*, 572 F.3d 644 (9th Cir. 2009) .......... 20

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir.2009) ....................................................... 20

*Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072 (9th Cir. 2006) .................................. 10

*Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008) ................................................. 10

*Lincoln v. Vigil*, 508 U.S. 182 (1993).............................................................................. 9

*Lopez v. Candaele*, 630 F.3d 775 (9th Cir.2010) ............................................................. 8

*Los Coyotes Band of Cahuilla & Cupeo Indians v. Jewell*, 729 F.3d 1025 (9th Cir. 2013) ........................................................................................................................ 9

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) .................................................................... 7

*National Center for Immigrants Rights, Inc. v. I.N.S.*, 743 F.2d 1365 (9th Cir. 1984) ................................................................................. 23

*Park Village Apartment Tenants Association v. Mortimer Howard Trust*, 636 F.3d 1150 (9th Cir. 2011) ................................................... 17-18

*Schroeder v. United States*, 569 F.3d 956 (9th Cir. 2009) ................................................. 3-4

*Sheldon v. Vilsack,* No. 12-1520, 2013 WL 4564422 (6th Cir. Aug. 28, 2013) .............. 18

*U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) ...................................... 15-16

*University of Texas v. Camenisch*, 451 U.S. 390 (1981)................................................... 22

*Warth v. Seldin*, 422 U.S. 490 (1975)................................................................. 8

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982)). "................................................ 24

*Western Radio Services Co., Inc. v. Espy*, 79 F.3d 896 (9th Cir. 1996)........................... 11

*Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7 (2008)........................ 7, 20

*Zepeda v. United States Immigration and Naturalization Serv.*, 753 F.2d 719 (9th Cir. 1985) ...................................................................... 23

## FEDERAL STATUTES

5 U.S.C. § 701(a)(2) ................................................................................. 9

5 U.S.C. § 706(2)(A) ......................................................................... 10, 11

5 U.S.C. § 706(2)(B) ................................................................................. 1

42 U.S.C. §§ 1471-1490 ........................................................................... 15

42 U.S.C. § 1471(g)........................................................................... 14-15

42 U.S.C. § 1480 ..................................................................................... 9

42 U.S.C. § 1480(d)................................................................................. 5

42 U.S.C. § 1480(g) ................................................................................... 17-18

42 U.S.C. § 1485 ........................................................................................ 4, 18

42 U.S.C. § 1490a ........................................................................................... 4

42 U.S.C. §§ 1441-1490 .................................................................................. 3

## FEDERAL REGULATIONS

7 C.F.R. §§ 3560.1 – 3560.800 ........................................................................ 4

7 C.F.R. § 3560.11 ........................................................................................... 5

7 C.F.R. § 3560.154(g)(2) ............................................................................... 5

7 C.F.R. § 3560.160(b) ................................................................................... 19

7 C.F.R. § 3560.259(c) ................................................................................... 13

7 C.F.R. § 3560.456(d)(1) ............................................................................ 5 ,9

7 C.F.R. § 3560.660(c) ................................................................................... 13

## OTHER AUTHORITIES

69 Fed. Reg. 69032 (November 25, 2004) ............................................. 4, 5, 19

# INTRODUCTION

The U.S. Department of Agriculture, Rural Development ("agency") has determined that it is in its best interests to foreclose on a long-defaulted loan it made to the owner of the Jandina Park complex in McMinnville.  Since 1996, the agency has had to run the property as a court-appointed receiver, and the agency is spending thousands of dollars in public funds each month on day-to-day operations for the complex.  The nonjudicial foreclosure sale is set for November 21, 2013.

The agency has informed the residents of the 36 units at Jandina of its foreclosure plans and has committed to ensuring that the low-income tenants benefitting from rent subsidies there will be able to take subsidies with them – if it is even necessary to move. The agency will bid at the sale, and if its bid is successful, there will be no change to the status quo for the tenants.

Plaintiffs are three residents of the 36-unit Jandina complex who oppose the foreclosure.  Plaintiffs' complaint asserts two counts under the Administrative Procedure Act ("APA").  Dkt 1.  First, Plaintiffs assert that the agency's decision to foreclose its loan is "arbitrary and capricious" under the APA.  Second, Plaintiffs asserts that the foreclosure violates their due process rights.[1]

---

[1] Plaintiffs have not identified a waiver of sovereign immunity for their due process claim, but the applicable waiver is the APA.  *See* 5 U.S.C. § 706(2)(B) (empowering the reviewing court to set aside final agency action that is "contrary to constitutional right, power, privilege, or immunity.").

This Court should deny Plaintiffs' motion for extraordinary injunctive relief. As Defendants explain below, Plaintiffs fail to meet their required burden on each of the four factors.

## FACTUAL BACKGROUND

In 1989, the agency funded the development of Jandina with a $1 million section 515 subsidized loan to a borrower, North McMinnville Associates. Declaration of Sherryl Gleason ¶ 8; Declaration of Rodney L. Hansen ¶ 4. In 1996, the agency was ordered receiver for the property. Gleason Dec. Exhibit A. The receivership was ordered in the wake of federal fraud charges against the Jandina borrower's general partner. Hansen Dec. ¶ 4 and Exh. A.

Jandina remains the sole agency property in Oregon, among 193 properties, where the agency is both lender and day-to-day manager as receiver. Hansen Dec. ¶ 5.

Beginning in 2004, the agency has explored various proposals to transfer the loan to a new borrower and avoid the costs of continuing as receiver. *Id*. ¶ 6. These have not succeeded. Jandina has not generated sufficient income to pay its essential operational expenses, fund its reserve account, or make payments on its loan since late 2010. *Id.* ¶ 7.

In 2009, the agency initially accelerated its loan to North McMinnville and notified the Jandina tenants that it was planning to liquidate its interest in the property. *Id*. ¶ 8 and Exh. B. In April 2013, the agency formally recorded an updated notice of

acceleration and set a nonjudicial foreclosure date for September 2013. Gleason Dec. ¶ 13 and Exhibit C. The date was later moved to November 21. Gleason Dec. ¶ 13.

In June 2013, the agency again contacted the Jandina tenants regarding its intentions to foreclose. Hansen Dec. Exh. D. In early September 2013, the agency met with the Jandina tenants to discuss the potential foreclosure and options for tenants affected by the foreclosure. Hansen Dec. ¶ 14. The agency subsequently provided further information to the lawyer for the three Plaintiffs in this action. *Id*. at ¶¶ 15-17 and Exhs. F and G.

The agency will bid at the November 21 sale, and if is the high bidder, it will own Jandina and the status quo will remain. Hansen Dec. ¶¶ 20-21. If the agency is not the successful bidder, it will issue each agency-subsidized tenant a Letter of Priority Entitlement, authorize each such tenant to transfer Rental Assistance to another property and provide agency housing vouchers. *Id*. ¶ 23. *See also* Hansen Dec. Exh. G at 5-7; Gleason Dec. Exh. E (further detail regarding these subsidies).

The agency has set a tenant meeting to occur immediately after the November 21 sale to update and assist the Jandina tenants. *Id*. at ¶ 18 and Exh. H.

## STATUTORY, REGULATORY, AND PROGRAM GUIDANCE BACKGROUND

### I.    The section 515 program.

Congress passed the Housing Act of 1949, 42 U.S.C. §§ 1441-1490, to encourage private investment in housing for elderly and low-income rural residents." *Schroeder v.*

*United States*, 569 F.3d 956, 958 (9th Cir. 2009).  Section 515 of the Housing Act

authorized the U.S. Department of Agriculture's Farmers Home Administration (later

incorporated into the Rural Housing Service ("RHS")) to make direct loans to borrowers

seeking to finance affordable housing.  *Id*. at 958-59; *see* 42 U.S.C. § 1485.  Involved

property owners, in exchange for reduced interest rates and other subsidies, agreed to rent

their covered properties only to qualified elderly and low-income tenants at affordable

rates until the owners had fully repaid their RHS loans.  *Schroeder*, 569 F.3d at 959; *see*

42 U.S.C. § 1490a.[2]

    The agency operates a multi-family rural renting housing direct loan program

under section 515.  *See* 7 C.F.R. §§ 3560.1 through 3560.800 (program regulations).

This program is typically used in conjunction with RHS's section 521 Rental Assistance

program, which provides project-based rental assistance payments to property owners to

subsidize tenants' rents to an affordable level.  The section 521 regulations are also

contained within 7 C.F.R. § 3560.  *See* 69 Fed. Reg. 69032, 69033 (November 25, 2004).

With Rental Assistance, tenants pay 30 percent of income toward their rent (including

utilities).  *Id*.  Tenants do not receive the subsidy directly but receive a "pass through"

benefit in lowered rents on properties that are receiving Rental Assistance.

---

[2] The Rural Housing Service ("RHS")  is now part of the Department of Agriculture's Rural Development.  Defendants here use the term "agency" to refer to both Rural Development and RHS.

The Housing Act permits the agency to "collect all claims and obligations arising out of or under any mortgage, lease, contract, or agreement entered into pursuant to this subchapter." 42 U.S.C. § 1480(d). Under the corresponding regulations, the agency "will initiate foreclosure" when a borrower is in default "and foreclosure is in the best interest of the Federal Government." 7 C.F.R. § 3560.456(d)(1).

A "letter of priority entitlement" ("LOPE") is a letter issued by the agency that provides a tenant with "priority entitlement to rental units in other Agency-financed housing projects for 120 days from the date of the LOPE." 7 C.F.R. § 3560.11. A LOPE letter puts that individual ahead of other tenants in the same income category. 7 C.F.R. § 3560.154(g)(2). RHS "recognizes that the LOPEs do not address all housing problems faced by tenants." 69 Fed. Reg.at 69096.

Congress has authorized a Rural Development Voucher Program that provides benefits for section 515 tenants facing potential economic hardship following a property foreclosure. See Gleason Dec. Exh. E.

## II.    The Project Servicing Handbook.

The Project Servicing Handbook ("Handbook") provide agency loan servicers with non-binding guidance about the agency's procedures for section 515 servicing actions involving borrowers receiving loans or grants for multi-family rural housing projects.

For Jandina, the agency has reached the determination that the property is no longer suitable to remain in the program.  Hansen Dec. ¶¶ 12, 19.  Given that determination, the Handbook recognizes that the agency then has discretion to either determine that the property "should be designated as non-program property," or "that a different course of action is more appropriate."  Gleason Dec. Exh. B at 11.

The Handbook outlines two options for removing a property by designating it as "non-program property."  *Id*. at 14.   The first option is allowing the borrower to prepay the mortgage.  *Id*.  That is inappropriate for Jandina, because the borrower has been in default on its loan since May 2009 and the agency has received no interest from the borrower in prepaying.  Hansen Dec. ¶ 12.  The second option for non-program designation is allowing the borrower to retain the property and repay its loan to the agency on "non-program rates and terms."  Gleason Dec. Exh. B at 14.  That option is inappropriate here, because the agency is responsible for protecting the integrity of the program and ensuring that the non-program designation does not provide undue rewards to an unresponsive borrower.  Hansen Dec. ¶ 12.  The Handbook emphasizes that a decision to designate a property as non-program should be used "primarily when the suitability problem was not intentionally caused by the borrower and the borrower made a good faith effort to overcome the problem."  Gleason Dec. Exh. B at 11.

In the case of Jandina, the agency has elected the "different course of action" that is committed to the agency's discretion.  *Id*.  Under this court of action, the agency may

initiate liquidation/foreclosure proceedings on the no-longer-suitable property. *See id.* at

12.

## LEGAL STANDARD

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that

should not be granted unless the movant, by a clear showing, carries the burden of

persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted).

Plaintiffs seeking a preliminary injunction must establish (1) that they are likely to

succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of

preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an

injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555

U.S. 7, 20 (2008). A preliminary injunction is "an extraordinary remedy" that may only

be awarded upon a clear showing that the plaintiff is entitled to such relief. *Id.* at 22.

A preliminary injunction may be issued when plaintiff demonstrates "serious

questions going to the merits" and a "balance of hardships that tips sharply toward the

plaintiff,. so long as the plaintiff also shows that there is a likelihood of irreparable injury

and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*,

632 F.3d 1127, 1135 (9th Cir. 2011).

## ARGUMENT

**I.      Plaintiffs are unlikely to succeed on the merits of their claims.**

For a variety of reasons, Plaintiffs are unlikely to succeed on the merits of their two APA claims, or in the alternative fail to demonstrate serious questions going to the merits.

**A. Plaintiffs' claims hang on future contingencies that may not occur.**

On November 21, 2013, the agency will bid for the property and may be the high bidder.  If that is the case, Plaintiffs will simply be able to continue to reside at Jandina with their current subsidies.  Hansen Dec. ¶¶ 20-21.  Here, Plaintiffs' dispute will only arise if the agency is outbid at the November 21 foreclosure sale.

Plaintiffs do not establish an injury-in-fact "of sufficient immediacy and ripeness" to satisfy the jurisdictional requirements of the federal courts.  *Warth v. Seldin*, 422 U.S. 490, 516 (1975). "A case is not ripe where the existence of the dispute itself hangs on future contingencies that may or may not occur."  *DBSI/TRI IV Limited Partnership v. United States*, 465 F.3d 1031, 1039 (9th Cir. 2006) (internal quotations omitted).

For these reasons, Plaintiffs cannot establish standing and there is therefore no likelihood of success on their claims.  *See Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir.2010) ("[A]t the preliminary injunction stage, a plaintiff must make a 'clear showing' of his injury in fact.").

**B.  The agency's foreclosure decision is committed to agency discretion by law.**

Both the Housing Act and its foreclosure regulations provide extremely broad discretion to the agency in foreclosing on its loans.  See 42 U.S.C. § 1480; 7 C.F.R. § 3560.456(d)(1) (stating that the agency "will initiate foreclosure" when a borrower is in default "and foreclosure is in the best interest of the Federal Government").

The courts do not have subject-matter jurisdiction to review agency actions under the APA that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Lincoln v. Vigil*, 508 U.S. 182 (1993). An agency action is committed to agency discretion by law if the statute does not provide a "meaningful standard against which to judge the agency's exercise of discretion."  *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

Here, the statutory language does not mandate agency action; it instead authorizes the agency to take, or not to take, action deemed appropriate under the regulations that the agency is obliged to promulgate.  And the regulation here confers strikingly broad discretion on the agency to foreclose when in the "Federal Government['s]" best interests.  Here, the applicable statute and regulation statute commits the agency's decisionmaking to the agency's judgment and there is no meaningful standard to guide judicial review of the agency's foreclosure decision.  *See Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1038-40 (9th Cir. 2013).

**C. Plaintiffs do not establish a likelihood that the agency's foreclosure decision was arbitrary and capricious under deferential APA review.**

Even if this Court concludes that the foreclosure decision was not committed by law to the agency's discretion, Plaintiffs fail to establish any likelihood of success on the merits of their first claim, brought under 5 U.S.C. § 706(2)(A).

This Court must Plaintiffs' likelihood of success on the merits (or "serious questions" on the merits) against the backdrop of the agency deference built into review under the APA.  Under the APA, a reviewing court will uphold agency action unless it finds the action was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Center for Environmental Law and Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1005 (9th Cir. 2011), *quoting* 5 U.S.C. § 706(2)(A).  This standard is "'highly deferential, presuming the agency action to be valid and [requires] affirming the agency action if a reasonable basis exists for its decision.'" *Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir.  2006) (internal quotation omitted).

An agency decision is arbitrary and capricious "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc) (internal quotation omitted).

The heart of Plaintiffs' argument is their mis-interpretation of a cherry-picked provision from agency's Project Servicing Handbook.  Plaintiffs' Memo at 9-11.  *See* Gleason Dec. Exh. B (copy of the relevant Handbook chapter).  There are several critical problems with Plaintiffs' focus on the Handbook.

First, the Handbook is not binding on the agency because, unlike the 7 C.F.R. § 3560 regulations, the Handbook was not adopted in accordance with the procedural requirements of the APA ( *e.g*., published in the Federal Register or the Code of Federal Regulations, subjected to notice and comment rulemaking, etc.).  *See Western Radio Servs. Co., Inc. v. Espy*, 79 F.3d 896, 901–02 (9th Cir. 1996).  The Handbook does not have the independent force and effect of law, and judicial review here proceeds "only under [the agency's] binding regulations."  *Id*.

In addition, the agency in fact followed its Handbook guidance, and the agency's reliance on its Handbook is afforded deference.  *See* Plaintiffs' Memo at 10-11 (recognizing that the agency is afforded deference as to the interpretations in the Handbook).

Plaintiffs' argument mischaracterizes the agency's administration of the Jandina loan and project.  The agency has <u>not</u> determined that the property should be designated non-program.  The agency believes that this designation would not be appropriate. Hansen Dec. ¶¶ 12, 19; Gleason Dec. Exh. B at 11.  The Handbook expressly envisions that the agency may pursue foreclosure as a "different course of action" to a non-program

designation.  Gleason Dec. Ex. B at 11.  Plaintiffs' brief features a bolded block quote that inaccurately characterizes the agency determination and ignores critical guidance elsewhere in the Handbook.  Plaintiffs do not acknowledge that the Handbook plainly recognizes that the agency has the discretion to either initiate liquidation/foreclosure or to make a non-program designation.  And Plaintiffs fails to acknowledge that a non-program designation – not selected here – would in any case usually apply in a different scenario than that faced by agency with the unresponsive defaulted Jandina borrower.  Gleason Dec. Exh. B at 11.

In a footnote, Plaintiffs claim that the agency ailed to conduct a project suitability analysis that is identified in the Handbook, failed to inform the tenants in writing that it is considering Jandina's program suitability (another Handbook provision), and failed to meet with tenants to explain the implications.  Plaintiffs' Memo at 10 fn.1.  None of these supposed Handbook mandates are anywhere in the regulations.  Apart from this, the agency completed all of these steps.  The agency conducted a suitability analysis, informed tenants in writing that it was considering suitability, and in fact met with the tenants to explain the implications of the anticipated foreclosure sale.  Hansen Dec. ¶¶ 11, 13-14.  Plaintiffs also cites a Handbook provision regarding postponing a non-program designation.  That is inapplicable here, because the agency is exercising the discretion recognized in the Handbook to liquidate/foreclose.  Gleason Dec. Exh. B at 14.

Here, the agency is not arbitrary and capricious, because the agency's regulations anticipate that rent-subsidized tenants may be required to move in certain situations, but do not require that tenants first be provided with alternate housing.  In fact, the regulations envision that tenants may be given priority entitlements to other housing options but that the tenants will first move out.  For example, the agency "may" transfer Rental Assistance from one housing project to another eligible housing project for a tenant who is moving due to displacement as a result of "liquidation."  7 C.F.R. § 3560.259(c).  Here, the agency has committed that it will transfer Rental Assistance for tenants from Jandina – if the agency is not the successful bidder.  Similarly, the agency's regulations allow it authorize loan prepayments by borrowers, even if that will require subsidized tenants to move.  In those cases, tenants may request a LOPE letter if the prepayment "is anticipated to result in increased net tenant contributions, displacements or involuntary relocations."  7 C.F.R. § 3560.660(c).  Although Jandina does not involve a prepayment scenario, this regulation illustrates that the agency regulatory scheme envisions scenarios where tenants may need to move out – but that tenants may receive benefits in light of that hardship.

Plaintiffs acknowledge that RD has written the tenants and met with them, but complain that this assistance is "cursory."  Plaintiffs' Memo at 11.  That does not establish that the agency's decision to foreclose on its borrower was arbitrary and capricious, or that it was unconstitutional.  Plaintiffs complain that the agency should

Page 13 –  DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY
        INJUNCTION; *Turner, et al. v. Vilsack, et al.;* Case No. 3:13-cv-01900-SI

have issued LOPE letters and vouchers before the foreclosure sale.  *Id*. at 11-12.

Plaintiffs' charges are also undermined by the reality that the agency will bid at the

foreclosure sale and will obtain the property if it is the high bidder.  In that case, there

will be no need to assist any tenants with relocation, with obtaining housing vouchers, or

with providing tenants LOPE letters.  In addition, vouchers may not be issued until a

third party buys the property.  *See* Gleason Dec. Exh. E.

Plaintiffs also incorrectly state that their subsidies "are not portable."  Memo at 3.

But Plaintiffs will be entitled to vouchers, which may be used anywhere in the United

States – and not only at RD-financed complexes.  *See* Gleason Dec. Exh. E and Hansen

Dec. Exh. G at 5-7  In addition, Plaintiffs will be entitled to transfer the Rental Assistance

on their Jandina units to any agency-subsidized project.  There are close to 200 such

projects throughout Oregon.  Hansen Dec. ¶ 5.

Similarly, Plaintiffs' subsidies will be not terminated, if the agency is outbid at the

foreclosure sale.  *See* Plaintiffs' Memo at 5 (wrongly stating that Plaintiffs will suffer the

"loss" of their subsidies).  Instead, Plaintiffs will be entitled to priority placement at any

agency-subsidized project – and will be entitled to a voucher that will allow them reduced

rent  at many other projects as well.  See also Memo at 5 (wrongly stating that Plaintiffs

will suffer the "loss" of their subsidies).

As part of their claim that the agency was arbitrary and capricious, Plaintiff also

allege violation of 42 U.S.C. § 1471(g).  Dkt 1, First Claim, ¶ 35.  Section 1471(g)

provides that the programs authorized by 42 U.S.C. §§ 1471-1490 "shall be carried out, consistent with program goals and objectives, so that the involuntary displacement of families and businesses is avoided." Plaintiffs appear to view section 1471(g) as a prohibition on any agency action that could possibly result in the displacement of a tenant. The language of the statute does not support this construction. The statute leaves the agency with broad discretion in deciding which policies will best further the objectives of the programs established by Congress. *See Albany Apartments Tenants' Ass'n v. Veneman*, No. 01-cv-1976, 2003 WL 1571576 * 11 (D. Minn. March 11, 2003) (rejecting claim that agency violated section 1471(g)). In addition, Plaintiffs' interpretation fails to account for the diligent attempts the agency has made to try to find non-foreclosure solutions for Jandina and the efforts the agency has made to reach out to tenants regarding its plans. *See* Hansen Dec.

For these reasons, Plaintiffs do not establish they are entitled to extraordinary injunctive relief on their 5 U.S.C. § 706(2)(A) claim.

**D. Plaintiffs do not establish a likelihood of success on their due process claim.**

Plaintiffs assert that the agency deprived Plaintiffs of due process, because the agency is terminating their rent subsidies and their "right to continue living in Jandina." Plaintiffs' Memo at 12. Generally, the due process clause requires "that individuals receive notice and a meaningful opportunity to be heard before the government deprives them of property." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).

Page 15 –  DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY
           INJUNCTION; *Turner, et al. v. Vilsack, et al.;* Case No. 3:13-cv-01900-SI

Plaintiffs have no likelihood of success on the due process claim, because the agency is not terminating their rent subsidies and the agency is not terminating their Jandina occupancy. If the agency buys Jandina at foreclosure, the status quo will remain. If another purchaser makes the high bid, the Plaintiffs will not lose their subsidies. Instead, Plaintiffs will have a priority entitlement to subsidized housing through LOPE letters and the transfer of Rental Assistance – and may elect to use an agency voucher which provides further flexibility in terms of available projects. Moreover, if another purchaser makes the high bid, Plaintiffs' leases will not terminate. Per Plaintiffs' own lease terms, their leases will instead transfer to the new owner. Gleason Dec. Exh. D at 6 (¶ 22.A of lease). If Plaintiffs have future grievances, their leases provide for a grievance process. *Id*. at 7 (¶ 26 of lease). Plaintiffs will also have the right to stay through the end of their current fixed-term lease, or 90 days if they receive a written lease termination notice from the new owner. Gleason Dec. Exh. C at 4-6

Plaintiffs' due process claim is premised on their belief that, if the agency does not purchase Jandina, the government will be terminating their rent subsidies. Plaintiffs' Memo at 12. That is incorrect. In fact, Plaintiffs will be issued LOPE letters that will put them at the top of the list for a vacancy in any agency-subsidized property; Plaintiffs will be entitled to transfer the Rental Assistance on their current units to use in other agency properties. *See* Hansen Dec. Exh. G at 5-7.

Plaintiffs also fail to articulate how they have a constitutional right to "object to the pending sale" through section 1480(g) when the agency as lender is exercising its rights as a secured party to foreclose a loan it made to the Jandina borrower. The loan is between the agency and the borrower never involved the tenants as a party. In fact, Plaintiffs are represented by counsel, and have been noticed and heard regarding the agency's foreclosure plans and the agency's commitment to assist them with continued subsidies, if the agency does not purchase the property. *See* Hansen Dec.

Plaintiffs rely on *Escalera v. New York City Hous. Auth.*, 425 F.2d 853 (2d Cir.), but that decision is inapposite. That case involved a state government's decision to terminate public housing tenancies on account of supposed tenant wrongdoing. The state government did not provide the tenants with alternate housing benefits. By contrast, here the agency is not terminating any tenancies. If the agency does not successfully bid at foreclosure, the Plaintiffs' leases by their terms will transfer to the new owner. At worst, Plaintiffs will have at least 90 days' written notice, if the new owner decides to terminate their leases. In addition, the agency will ensure that the Jandina subsidized tenants receive LOPE letters, are able to transfer Rental Assistance, and will receive agency vouchers. That is no violation of due process.

Plaintiffs also cite *Park Village Apartment Tenants Association v. Mortimer Howard Trust*, 636 F.3d 1150 (9th Cir. 2011), where tenants had a protected right to remain in a project, because specific language in the applicable HUD statute conferred a

right to remain.  *Id*. at 1156.  Here, by contrast, there is no statute or regulation conferring a right to remain.

  As part of their due process claim, Plaintiffs claim the agency violated a due process "guarantee" in 42 U.S.C. § 1480(g).  *See* dkt 1, Second Claim, ¶ 37.  In their preliminary injunction briefing, Plaintiffs repeat this charge, but do not articulate an argument as to how section 1480(g) is a guarantee that has been violated.

  The statute grants the agency the power to issue rules and regulations to assure that:

> applicants denied assistance under this subchapter or persons or organizations whose assistance under this subchapter is being substantially reduced or terminated are given written notice of the reasons for denial, reduction or termination and are provided at least an opportunity to appeal an adverse decision and to present additional information relevant to the that decision to a person, other than the person making the original determination, who has authority to reverse the decision.

42 U.S.C. § 1480(g).

  Plaintiffs are unlikely to prevail on the merits of their section 1480(g) theory.  The agency's appeals regulations were promulgated under 42 U.S.C. § 1480(g), which granted the agency the power to issue rules and regulations governing appeals.  In a recent ruling, a federal court rejected a due process challenge brought under section 1480(g), asserting that plaintiffs "have no protected legal interest in an appeals process that the Secretary was authorized, but not obligated, to establish."  *Sheldon v. Vilsack*, No. 12-1520, 12-3905, 2013 WL 4564422 (6th Cir. Aug. 28, 2013) (unpublished disposition).

Moreover, the agency regulations do not provide tenants with an administrative appeal of an agency decision to foreclose a defaulted borrower's loan, because the regulations address agency decisions that may negatively impact an "applicant" or a "borrower."  69 Fed. Reg. at 69096.  Tenants "cannot file grievances in cases of displacement."  69 Fed. Reg. at 69096.  Tenants have the right under the regulations to file a federal administrative grievance against an action by the Jandina borrower regarding housing project operations or the failure to act that adversely affects the tenants.  7 C.F.R. § 3560.160(b).

Finally, assuming for argument that the agency's decision to foreclose its loan to the Jandina borrower is considered a substantial reduction or termination in the agency's assistance to Plaintiffs under section 1480(g), there is no practical violation of due process.  Plaintiffs have been given notice of the reason for the foreclosure and have met with the agency.  And Plaintiffs have taken the opportunity to file this action and make their case to this Court, which has the authority to reverse the decision.  In a relevant precedential ruling, First Circuit held that section 1480(g) does not require an administrative review process.  *Brewer v. Madigan*, 945 F.2d 449, 453 (1st Cir. 1991).  Instead, *Brewer* held that a state judicial proceeding met the "appeal" requirement of section 1480(g), because it provided tenants with an opportunity to present their evidence to a person with the authority to reverse.  *Id*. at 454.

For these reasons, Plaintiffs do not establish they are entitled to extraordinary injunctive relief on their APA due process claim.

## II.     There is no likelihood of irreparable harm.

"Preliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable injury is likely in the absence of an injunction." *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir.2009) (quoting *Winter*, 555 U.S. at 22) (noting that the Supreme Court in *Winter* rejected the Ninth Circuit's "possibility of irreparable harm" test). "Typically, monetary harm does not constitute irreparable harm." *Cal Pharmacists Ass'n v. Maxwell–Jolly*, 563 F.3d 847, 851 (9th Cir.2009).

Plaintiffs fail to show a likelihood of irreparable harm.  First, it is only speculation that there will be any change to Plaintiffs' residency status quo.  That is because the agency will bid at the November 21 sale and may purchase the Jandina property.  Hansen Dec. ¶¶ 20-21.

Even if the agency is outbid by another party, Plaintiffs will not be irreparably harmed.  They will be able to continue residing at Jandina, at a minimum, for 90 days. They will receive priority entitlement letters and transfers of their Rental Assistance to any other available agency properties.  They will receive rental subsidy vouchers. Hansen Dec. ¶ 23.  A new Jandina owner may accept these vouchers, allowing Plaintiffs to continue their subsidized residency there.  *Id.*

Plaintiffs indicate they will have avenues for recourse against a new Jandina owner even if their leases might be terminated at some future date.  This undercuts their claim of irreparable harm.  Plaintiffs acknowledge that they may challenge the new Jandina owner regarding "the loss of their property interest,"  if the agency is outbid.  Plaintiffs' Memo at 8-9.   Plaintiffs claim that the new owner might "assert" it had no "prior notice of Plaintiffs' claims."  *Id.*  This contention is odd, because Plaintiffs' lawsuit and filings here are a matter of public record, and these filings predate the foreclosure sale.

Even if Plaintiffs must leave Jandina, they are likely to have a variety of options to remain in subsidized agency properties.  At the moment, illustratively, there are 150 vacant two-bedroom apartments in agency-subsidized family units in Oregon.  Gleason Dec. ¶ 16.  There are also 11 vacant three-bedroom apartments in agency-subsidized family units in Oregon.  And there are 9 two-bedroom subsidized family units vacant within 35 miles of Jandina.  *Id.*

The preliminary injunction ruling is instructive in *Brown v. U.S. Department of Agriculture*, No. 06-cv-1329, 2006 WL2644925 (M.D. Fla. Sept. 14, 2006). There, low-income tenants in an agency-subsidized apartment project received 60-day notice to vacate their apartments when the agency approved demolition plans for the project.  *Id.* at * 1.  The tenants received LOPE letters, and moved for preliminary injunctive relief.  *Id.* at * 2.  The tenants argued the LOPE letters were of limited value and that they might

have to relocate far from their current residences.  The district court denied relief on irreparable harm grounds, noting that the tenants "will continue to have the opportunity to seek other affordable housing and will not suffer irreparable harm merely because they may have to relocate someplace that is not the most convenient for them." *Id.* at * 3.

For these reasons, Plaintiffs fail to demonstrate that they are entitled to extraordinary injunctive relief on their claims.

### III.    The balance of hardships is in the agency's favor.

The purpose of preliminary injunctive relief is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Here, the three Plaintiffs face – at most – the possibility that they might need to relocate although they will have a priority entitlement to subsidized agency housing.

By contrast, the agency is faced with continuing to service a "white elephant" property as receiver if it cannot have the option of finding a foreclosure buyer.  This is a hardship for the efficient administration of a program aimed broadly at ensuring maximal benefits for lower-income rural residents.  Jandina is costing the agency close to $7,000 in direct property management and operational expenses each month.  Gleason Dec. ¶ 12. In the other 192 agency properties in Oregon, the agency does not bear these costs,

because the section 515 borrower/owner manages the property day-to-day.  Hansen Dec.
¶ 5.  In a time of severe limits on federal budgets and congressional appropriations, it is a
hardship for the agency to continue to be yoked to Jandina for further months, without the
ability to be able to make the property available for sale and find better ways to meet its
section 515 duties and goals.

In examining the balance of hardships, it is salient that Plaintiffs are three
individuals in a 36-unit complex.  There are many more tenants in the complex's
remaining 21 units with Rental Assistance, and the complex's 12 units with no Rental
Assistance subsidy.  There is no showing here that these other tenants face an immediate
hardship warranting extraordinary injunctive relief.  This Court cannot adjudicate the
rights of persons not before it.  *See Zepeda v. United States Immigration and
Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1985).  Plaintiffs framed their complaint
as a class action suit, but have not moved for class certification along with seeking
preliminary injunctive relief.  The Ninth Circuit emphasizes that a preliminary injunction
may properly cover only the named plaintiffs, in the absence of class certification.
*National Center for Immigrants Rights, Inc. v. I.N.S.*, 743 F.2d 1365, 1371-72 (9th Cir.
1984).

**IV.    Enjoining the foreclosure sale is not in the public interest.**

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)).

Here, the public interest favors allowing the agency to seek a foreclose buyer.  The agency's budget is finite.  The loan concessions, rent subsidies, and administrative costs it incurs come from its appropriated funds.   Because a project like Jandina is still failing economically, after receiving rent subsidies and a mortgage obtained on favorable terms, further costs are being incurred by the agency.  With Jandina, the agency is spending thousands each month just to keep the lights on and other day-to-day essentials.   To the extent the agency must continue to spend public funds this way, it takes away from its resources to run projects that, with rent subsidies and good loan terms, are economically viable.

It is in the public interest to allow the agency to exercise its broad discretion to foreclose when the borrower defaults, and thereby allocate public agency funds to projects where it can serve the largest number of needy tenants (through rent supplements and favorable loan terms), rather than use up a substantial portion of its budget on the projects that are failing despite rent subsidies and favorable loans.

## CONCLUSION

For these reasons, this Court should deny Plaintiffs' motion for preliminary injunction.

Dated this 8th day of November, 2013.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney
District of Oregon


*/s/ Sean E. Martin*
SEAN E. MARTIN
Assistant United States Attorney