**Michael Pijanowski, OSB #004426**
mpijanowski@oregonlawcenter.org
**Leslea Smith, OSB #853324**
lsmith@oregonlawcenter.org
OREGON LAW CENTER
230 NE Second Ave., Suite F
Hillsboro, OR 97124
Phone: (503) 640-4115
Fax: (503) 640-9634

**Edward Johnson**
ejohnson@oregonlawcenter.org
OREGON LAW CENTER
522 SW Fifth Ave., Suite 812Portland, OR 97205
Phone: (503) 473-8312
Fax: (503) 295-0676

Of Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **TRINKA A. TURNER**, **JUNEA R. MURPHY**, and **JENNIFER L. JUNKINS**, on behalf of themselves and all other similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>**THOMAS VILSACK**, Secretary of the Department of Agriculture; **DOUGLAS O'BRIEN**, Acting Undersecretary for Rural Development; **RICHARD DAVIS**, Acting Administrator Rural Housing Service; and VICKI L. WALKER, Oregon RD State Director,<br><br>                              Defendants. | Case No. 3:13-cv-01900-SI<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES** |

I.      Introduction

Plaintiffs are entitled to attorneys' fees in this case because they are the prevailing parties, they have properly engaged an expert counsel whose expertise was required to conduct this case, and their time expenditures were reasonable in all but two instances. The Defendants' contrary contentions are incorrect or unsupported.

II.     Plaintiffs are the Prevailing Parties and are Entitled to Attorneys' Fees

Plaintiffs are entitled to attorneys' fees by virtue of their having secured a preliminary injunction in this case, which prevented Rural Development (RD) from carrying out the non-judicial foreclosure sale of Jandina Apartments. Under the parties' stipulation for dismissal of this case, in which RD states for the first time that it has rescinded its notice of sale as of October 29, 2015, RD must now start any new foreclosure sale in accordance with RD laws, regulations, and policies and must again file a notice of foreclosure.

The Ninth Circuit has held that a party is the prevailing party if it "succeed[ed] on any significant issue in litigation which achiev[ed] some of the benefits" it sought in bringing suit. *National Wildlife Federation v. Federal Energy Regulatory Comm'n,* 870 F.2d 542, 544 (9th Cir.1989). Further, it has held that there must be a "judicial imprimatur" that changes the legal relationship of the parties. *Watson v. County of Riverside,* 300 F.3d 1092, 1096 (9th Cir.2002). *See also*, *Richard S. v. Dep't of Dev. Services State of California*, 317 F3d 1080, 1089 (9th Cir. 2003) (District court erred as a matter of law when it denied plaintiffs prevailing party status based on their success in obtaining a preliminary injunction); *Williams v. Alioto*, 625 F.2d 845, 847 (9th Cir. 1980) (by obtaining the preliminary injunction appellees prevailed).

When a preliminary injunction is involved, the Ninth Circuit has clarified that the touchstone of the inquiry is whether the preliminary injunction was sufficiently on the merits and

whether the relief was sufficiently enduring to satisfy the requirement that it materially altered the parties' legal relationship. *Higher Taste, Inc. v. City of Tacoma,* 717 F.3d 712, 717 (9th Cir. 2013). This Court issued its preliminary injunction on the basis that the Plaintiffs have raised serious questions going to the merits of their claim. Dkt. 15 Pgs. *4-10. Thus, the injunction materially altered the parties' legal relationship to entitle the Plaintiffs to recover their attorneys' fees. *Diaz v. Brewer*, 2015 WL 3555282 (D. Az. 2015) (Plaintiff whose case was dismissed as moot after securing a preliminary injunction is entitled to attorneys' fees).

The Defendants' reliance on *Melkonyan v. Sullivan*, 501 U.S. 89, 103 (1991) for the proposition that this Court lacks jurisdiction to decide the Plaintiffs' EAJA request, Dkt. 49, pg. 6, is totally misplaced. The cited statement is pure dictum. It is an example that the Supreme Court suggested may deprive a party from receiving an award of EAJA fees when their case is dismissed. Defendants have not cited any cases that have followed that dictum. After *Melkonyan*, courts have held that, when parties voluntarily dismiss an action, a prevailing party can file for attorneys' fees under EAJA. *See*, *Hoa Hong Van v. Barnhart,* 483 F.3d 600 (9th Cir. 2007); *Scafar Contracting, Inc. v. Secretary of Labor,* 325 F.3d 422 (3d Cir. 2003); *Adams v. Securities & Exchange Commission*, 287 F.3d 183 (D.C. Cir. 2002)[1] *Bryan v. Office of Personnel Management,* 165 F.3d 1315 (10th Cir. 1999). Accordingly, the Plaintiffs are entitled to attorneys' fees.

The Defendants' unsupported claim that under 28 U.S.C. § 2412 only final and not appealable orders trigger the award of fees, Dkt. 49, pg. 6, is also wrong. The plaintiffs are prevailing parties by virtue of the Court having issued a preliminary injunction and not by virtue

---

[1] These courts have split on whether the time for filing is within 30 days after the time for an appeal has expired or whether a case by case assessment must be made depending on whether the order is appealable. That issue is, however, not before this Court because the Plaintiffs filed their motion for attorneys' fees within 30 days of the voluntary dismissal having been filed.

Plaintiffs' Reply ISO Their Motion for Attorneys' Fees        3

of the parties having entered into a stipulation for dismissal. See, *Carbonell v. I.N.S,* 429 F.3d 894, 898-99 (9th Cir. 2005).

The Defendants' claim, Dkt. 49, pg. 8, that RD's voluntary rescission of the foreclosure brings this case within the holding in *Buckhannon Bd. And Care Home, Inc. v. W.VA Dep't of Health and Human Res.*, 532 U.S. 598 (2001), is similarly meritless. The "catalyst theory" only comes into play when the government voluntarily takes action before a court has taken action. It does not apply in this case when RD changed its position *after* the Court issued its opinion that the Plaintiffs have raised serious questions that go to the merits of their claims.

Moreover, Defendants' reliance on *Klamath Siskiyou Wildland Center v. U.S. Bureau of Land Mgmt.*, 589 F3d, 1028, 1031 (9th Cir. 2009), Dkt. 49, pg. 8, is misplaced. There was no judicial imprimatur in that case because the stipulated order merely postponed the sale of the property and the Bureau of Land Management could proceed with the sale after the delay expired. In this case, RD was enjoined from proceeding with a scheduled foreclosure until the case was resolved. This is a materially different from the stipulated order entered in *Klamath*.

### III.    Plaintiffs are entitled to recover fees for Mr. Anders Participation in the Case

Mr. Anders' agreement with Plaintiffs' counsel was that he would assist them in developing the case, confer with them on litigation strategy, and draft pleadings that would be reviewed, edited and signed by them. Mr. Anders and Plaintiffs' counsel also agreed that he would not deal with or represent the Plaintiffs, would not sign any pleadings, would not make any appearances in court, and would not talk with or deal with defendants' counsel. Johnson Declaration at ¶ 8; Anders Declaration at ¶ 5.  In short, he shared his knowledge and expertise with Plaintiffs' counsel without practicing before this Court. In *Winterrowd v. American General Annuity Ins. Co.*, 556 F.3d 815 (9th Cir. 2011), the court reversed a lower court decision denying attorney's fees to an Oregon attorney who assisted members of the California

Bar in litigating a case before the Central District of California. On facts nearly identical to this case, the court held that the plaintiffs are entitled to obtain an award of fees for the Oregon attorney despite the fact that he did not appear or practice law in the Central District of California. 556 F.3d at 825. It found that because the Oregon attorney was not a member of the

> California Bar, did not physically appear before the Central District, did not sign pleadings in the case before the Central District, had minimal, nonexclusive contacts with the Winterrowd plaintiffs, that [the California attorney], who was licensed to practice law in California, was the person who alone remained responsible to the plaintiffs, and that [the Oregon attorney] did not render legal services directly to the plaintiffs, the Winterrowd plaintiffs may recover attorney's fees for his work.

*Id.*[2] *Accord, Voravong v. Astrue*, 2011 WL 4375279 (E.D. Ca. 2011). Accordingly, the Defendants' argument, that the Plaintiffs are not entitled to recover fees for Mr. Anders' work because he did not make an appearance before this Court, is not identified as litigation counsel in any of the Plaintiffs' pleadings and is not admitted to practice in this court, even under *pro hac vice* status, Dkt. 49, pg. 10, is meritless.

The defendants also challenge Mr. Anders' claim for fees on the grounds that the Plaintiffs have failed to explain why Mr. Anders' expertise was needed in light of their housing law litigation experience and length of practice. Dkt. 49, pg. 10. As the declarations of Edward Johnson, Leslea Smith and Michael Pijanowski disclose, they turned to Mr. Anders for assistance because they had no experience with cases involving the RD housing programs that are the subject of this litigation and had no knowledge or expertise with respect to RD's

---

[2] The Court noted that its holding does not adversely impact the very important role *pro hac vice* admissions play in our federal court system and that an attorney may not receive attorney's fees if there is evidence he did not meet the legal qualifications to be admitted *pro hac vice* to the bar of the relevant court had he applied. This is not the case with Mr. Anders. He is a member in good standing of the California Bar and the Ninth Circuit and has been admitted *pro hac vice* in *Brown v. Vilsack*, 1:14-CV-01739-PA, which was filed in this District.

foreclosure practice. Mr. Johnson had only represented clients who were being evicted from RD rental housing or who were denied admission to such housing. Mr. Pijanowski had no experience with the RD rental housing programs. (Johnson Dec. at ¶¶ 2-7; Smith Dec. at ¶¶ 2-3; Pijanowski Dec. at ¶¶ 2-3)

In light of the then imminent pending foreclosure and lack of familiarity with the RD rental housing programs or its foreclosure practices, they turned to Mr. Anders who they knew to be an expert on all facets of the RD housing programs. Their reliance on Mr. Anders expertise is thus justified and Mr. Anders' request for attorney's fees is fully justified.

### Mr. Anders hourly rate is not excessive.

The rule for awarding enhanced EAJA rates in the Ninth Circuit is that

> Enhanced hourly rates based on the special factor of the limited availability of qualified attorneys for the proceedings involved may be awarded under EAJA where the attorneys possess "distinctive knowledge" and "specialized skill" that was "needful to the litigation in question" and "not available elsewhere at the statutory rate."*Thangaraja v. Gonzales,* 428 F.3d 870, 876 (9th Cir.2005); *Love v. Reilly,* 924 F.2d 1492, 1498 (9th Cir.1991); *see also Pierce v. Underwood,* 487 U.S. 552, 572, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

*Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2011).

Mr. Johnson's and Mr. Anders' declarations clearly disclose that Mr. Anders qualifies for enhanced EAJA fees. He has distinctive knowledge and specialized skills about the RD housing programs from his 37 years of practice devoted exclusively to the RD housing programs. He has participated successfully in major litigation against the agency on cases of first impression, authored and published authoritative manuals on the RD housing programs, conducted hundreds of training sessions on the operations of the RD single and multifamily housing programs, and provided technical assistance to thousands of attorneys representing residents of RD rental housing. Mr. Anders has met regularly with RD Administrators and USDA Assistant Secretaries

about the operation and administration of the RD housing programs. Mr. Anders also knows two former RD Assistant Administrators for Multi-family Housing and the former head of the RD Office of Preservation, who were able to inform him about RD foreclosure practices and about how RD became the receiver responsible for managing Jandina Apartments. Edward Johnson's Dec. ¶ 5-7, Gideon Anders' Dec. ¶ 7. Mr. Johnson's Declaration makes it clear that Mr. Anders' knowledge and skills were needed to conduct this litigation and that other attorneys were not available anywhere at the statutory EAJA rates.

The Ninth Circuit Court awards attorneys with specialized knowledge prevailing rates in the market in which that attorney is working and not in the market where the litigation takes place if local attorneys do not have those skills. *Gates v. Deukmajian*, 987 F.2d 1392, 1404-05 (9th Cir. 1992).[3] In this case the relevant market is San Francisco where Mr. Anders practices.

The Defendants claim that such a rate has never been awarded, Dkt., 49, pg. 12, is simply without foundation. In support for their motion for attorneys' fees, the Plaintiffs attached the Declaration of Ms. Carol A. Sobel. It cites to several cases where fees in excess of $740 have been awarded. *See*, Dkt. 45-6 ¶¶ 15, 16, 17, 19, 21 and 24.

Mr. Anders has also enclosed a declaration from Richard M. Pearl which states that Mr. Anders' $740 rate is reasonable, ¶ 10, and well within the award of other fees in the San Francisco market. ¶ 11. He cites to more than 10 cases where the awarded fees to attorneys with experience comparable to Mr. Anders' that are well in excess of the $740

---

[3] Defendant's argument that Oregon courts look at the local prevailing rates is not consistent with Ninth Circuit law or with EAJA case law. The two cited cases in support of their argument are cases where the attorneys' fees were not awarded under EAJA but under an Oregon statute that requires that fees be awarded in conformance with local rates. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F.Supp. 2d 1228, 1241 (D. Or. 2013) (O.R.S. 20.075 ¶ (2)(c)); *Roberts v. Interstate Dist. Co.,* 242 F. Supp, 2d 850, 855 (D. Or. 2002).

request made by him. In fact, the highest awarded rates are in excess of $1,000 per hour. Mr. Pearl also lists what San Francisco firms pay their attorneys with experience comparable to Mr. Anders. In practically all cases the salaries of those attorneys exceed the rates that Mr. Anders is claiming in this case.

IV.     **The Plaintiffs' Request for Fees Are Reasonable**

Plaintiffs' requests for compensation for the time spent on this case are, with one exception, reasonable with care being taken to avoid duplication. Notwithstanding, Defendants make 9 specific challenges to Plaintiff's compensation for time spent on the case. Plaintiffs will respond to each of those challenges separately.

1. **Ms. Smith's Multiple Phone Calls from August to December.** Based on contemporaneous records, Ms. Smith' enclosed declaration identifies the persons with whom she conversed during these calls. Ms. Smith Dec. ¶ 4, Exhibit A to Plaintiff's Motion for Attorneys' Fees and Costs. Each of these calls was with the individual Plaintiffs or counsel for Defendants, and are all compensable under EAJA.

2. **Mr. Pijanowski's Calls.** Ms. Smith has reviewed the contemporaneous case records in this case and has identified each of the calls made by Mr. Pijanowski that the Defendants claim are not compensable because they did not identify the persons on the call and their subject matter. Ms. Smith declaration provides that information for all but one of the calls, which totaled .1 hours. Ms. Smith Dec. ¶ 5. Accordingly, Plaintiffs reduce their hourly claim for Mr. Pijanowski by $ 19.

3. **Plaintiffs' Motions to Amend and for Class Certification.** Plaintiffs' motions to Amend the Complaint and for Class Certification were filed on January 14, 2014 in accordance with the Court's scheduling telephone conference on December 6,

2013. See Dkt. 20, Minutes of Scheduling Order. Both motions were timely in light of the Court's efforts to expedite resolution of the case. See, *id.* Briefing on the motions was suspended when the Defendants requested and were granted an extension to file the administrative record. Dkt. 25, Minutes of January 23, 2014, telephone conference. A month later, the parties, at the Defendants' request, filed a joint status report requesting that matters and deadlines be suspended. Dkt. 30. Further status reports suspended briefing until Nov. 7, 2015. On October 9, 2015, the Court, *sua sponte,* denied Plaintiffs' motions without prejudice and with leave to renew. Dkt. 37.

Defendants claim that the Plaintiffs are not entitled to attorney fees for filing these motions because they were denied by the Court and had no bearing on the case. Dkt. 49, Pg. 14. Defendants' claims are wrong. Both motions were filed while the case was active[4] and advanced the Plaintiffs' interests. Indeed, under Rule 23 (c)(1), of the Fed. R. Civ. P., courts must decide whether a case may be brought as a class action at the earliest practicable time. Plaintiffs were required by the Court to file the motions by January 14, 2014, and are now entitled to secure attorneys' fees for the time that they spent preparing them and supporting memoranda. The fact that they were never acted upon is irrelevant.

4. **Ms. Smith's Discovery Time.** After this Court issued its preliminary injunction the parties agreed that the Defendants would produce the record for this case. It consisted of over 19,000 pages of documents. The time that Ms. Smith spent on

---

[4] This case remained active between the issuance of the preliminary injunction and the final status report in November of 2015. Each of the joint status reports filed by the parties stated that the government did not have current plans to pursue the Jandina foreclosure. As a result, Plaintiffs' counsel continued to protect their clients' interests by taking actions to prepare their case should the Defendants choose to proceed with this case. It was not until the November 2015 status report that the Defendants advised Plaintiffs that they had rescinded the Jandina foreclosure. That rescission prompted Plaintiffs to stipulate to dismiss the case without prejudice.

reviewing these documents were misidentified in her time records as 'discovery.' Smith Dec. ¶ 6. Her time reviewing the documents are reasonable and compensable in light of the fact that RD had not rescinded its foreclosure actions prior to October 25, 2015.

     **5.**     **Internal Conferrals.** On several occasions Ms. Smith and Mr. Pijanowski conferred about this case and the strategy that they should follow in pursuing their clients' interests. When reviewing the timesheets, Ms. Smith deleted hours that she thought may be duplicative. Smith Dec. ¶ 5 and 7. Plaintiffs believe that the time remaining time billed to this case is therefore reasonable.

     6.     **Ms. Smith Attendance at the hearing.** Contrary to the Defendants' contention, Dkt. 49, pg. 14, Ms. Smith attended the hearing before this Court. Smith Declaration ¶ 8. Moreover, Ms. Smith was the primary contact with the Plaintiffs in the case and attended the hearing in order to respond to questions about the Plaintiffs should they arise and to communicate with the clients immediately after the hearing. Thus her time for attending the hearing is compensable.

     Her driving time to the hearing is also compensable. Under this District's case law driving time is billable to clients and therefore subject to reimbursement under EAJA. *Nat'l -Warranty Ins., v. Greenfield,* 2001 WL 34045734, at *6 (D. Or. 2001); *Atlantic Recording Corp. v. Anderson,* No. CV 05–933–AC, 2008 WL 2536834, at *12 (D. Or. June 24, 2008).

     7.     **Mr. Anders' Time for Preparing the Complaint.** This case was one of first impression. To file the complaint, Mr. Anders had to carefully review documents and information provided by the clients in support of their claims and to understand the nature of the claims in light of the fact that many of the agency's actions were mandated

by Handbooks that contained several inconsistencies. Mr. Anders also had to review documents that explained how RD became the receiver. Mr. Anders categorized all this time as part of his drafting of the complaint for the case. Thus, the hours that he claimed for doing that work are reasonable.

8.     **Mr. Anders' Conference calls.** In his timesheets Mr. Anders has designated various calls with CC, which referred to the Plaintiffs' Oregon counsel. These conference calls were held to review what actions should be taken at various stages of the proceedings. They were held before briefs or other documents needed to be filed, to review drafts of such documents, and to prepare Plaintiffs' Oregon counsel for argument, status conferences with the Court, or discuss exchanges with Defendant's counsel about status reports and the RD produced administrative record. Mr. Anders believes that the time recorded for those calls are reasonable. Anders Dec. ¶ 8.

9.     **Mr. Anders' request for time to prepare the time sheets.** Plaintiffs concede the Mr. Anders' time for preparing his timesheets should not be assessed at the enhanced rate but at the EAJA approved rate. The change reduces Mr. Anders request for fees for that time from $2220 to $ $561.06, a reduction of $1658.94 in his fee request.

## V.     CONCLUSION

Plaintiffs fee motion requested an award of $107,000. Plaintiffs modify this request to $ 105,322 to account for the time concession made in this memorandum. Plaintiffs request that they be awarded that amount.

/ / /

/ / /

/ / /

Dated January 15, 2016.                    Respectfully submitted,

                                           /s/ Leslea S. Smith

                                           LESLEA S. SMITH
                                           Attorney for the Plaintiffs