IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TRINKA A. TURNER,** *et al.*, | Case No. 3:13-cv-1900 SI |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| **THOMAS VILSACK,** *et al.*, | |
| Defendants. | |

Michael Pijanowski, Leslea Smith, OREGON LAW CENTER, 230 N.E. Second Avenue, Suite F, Hillsboro, OR 97124; Edward Johnson, OREGON LAW CENTER, 522 SW Fifth Avenue, Suite 812, Portland, OR 97205. Of Attorneys for Plaintiffs.

Billy J. Williams, United States Attorney, Sean E. Martin, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY FOR THE DISTRICT OF OREGON, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

This matter is before the Court on Plaintiffs' application for attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Dkt. 45. Defendants, officials with the United States Department of Agriculture ("USDA") and its Rural Development ("RD") and Rural Housing Service (collectively, "Defendants" or "United States") object,

PAGE 1 – OPINION AND ORDER

arguing that no attorney's fees should be awarded to Plaintiffs because the Court lacks

jurisdiction to consider the fee application and Plaintiffs are not the "prevailing party" as

required under the EAJA. The United States also argues that, to the extent the Court will

consider an award of fees, the amount of fees requested by Plaintiffs is unreasonable and should

be reduced. The United States does not object to Plaintiffs' request for costs. For the following

reasons, Plaintiffs' application is granted in part, and Plaintiffs are awarded attorney's fees in the

amount of $60,907.87 and costs in the amount of $625.24.

## STANDARDS

The EAJA authorizes the payment of attorney's fees to a prevailing party in an action

against the United States, unless the government shows that its position in the underlying

litigation "was substantially justified." 28 U.S.C. § 2412(d)(1)(A). Although the EAJA creates a

presumption that fees will be awarded to a prevailing party, Congress did not intend fee shifting

to be mandatory. *Flores v. Shalala*, 49 F.3d 562, 567 (9th Cir. 1995). The decision to deny EAJA

attorney's fees is within the discretion of the court. *Id.*; *Lewis v. Barnhart*, 281 F.3d 1081, 1083

(9th Cir. 2002). Fee awards under the EAJA are paid to the litigant, and not the litigant's

attorney, unless the litigant has assigned his or her rights to counsel to receive the fee award.

*Astrue v. Ratliff*, 560 U.S. 586, 596-98 (2010).

Under the EAJA, if the government's position is not substantially justified, the court has

discretion to determine whether the requested fees are reasonable. *See Comm'r, INS v. Jean*, 496

U.S. 154, 160-61 (1990) (the court has similar discretion under the EAJA to determine the

reasonableness of fees as it does under the Civil Rights Attorney's Fees Awards Act of 1976, 42

U.S.C. § 1988, as described in *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)); *U.S. v.

Milner*, 583 F.3d 1174, 1196 (9th Cir. 2009) (fees requested under the EAJA must be

reasonable); *Atkins v. Apfel*, 154 F.3d 986, 989 (9th Cir. 1998) (discussing the Jean clarification

that the Hensley analysis applies to EAJA cases). One factor that a court must consider in this analysis is the results obtained. *See Atkins*, 154 F.3d at 989 (the results obtained factor of the Hensley fee analysis applies to cases under the EAJA).

## BACKGROUND

Plaintiffs are low-income tenants in Jandina, a 36-unit apartment building that is part of the USDA's RD housing portfolio. Through the RD program, Plaintiffs receive subsidies that enable Plaintiffs to pay no more than 30 percent of their income for rent and utilities.

Through the RD program the USDA loans money on favorable terms for the development of low-income housing. In these circumstances, the USDA acts generally only as the lender. With Jandina, however, the USDA has a more substantive role. In 1989, the USDA loaned money for the development and operation of Jandina as low-income housing. In 1996, the USDA was appointed as the receiver of Jandina, and continued to serve in that capacity during the time relevant to this litigation.

In 2009, the USDA accelerated its loan to the developer of Jandina and notified the tenants of Jandina that the USDA was planning to liquidate its interest in the property. In April 2013, the USDA formally recorded an updated notice of acceleration and set a nonjudicial foreclosure for September 2013. The foreclosure sale was later moved to November 21, 2013. On October 24, 2013, Plaintiffs filed a putative class action complaint on behalf of all residents of Jandina, seeking an injunction and alleging that Defendants' conduct violated the Administrative Procedure Act ("APA") and the Due Process Clause of the United States Constitution. On October 31, 2013, Plaintiffs filed a motion for a preliminary injunction. On November 18, 2013, the Court granted Plaintiffs' motion for a preliminary injunction and enjoined the foreclosure sale of Jandina.

On January 14, 2014, Plaintiffs filed a contested motion for leave to amend their complaint and filed a motion to certify the class. On January 22, 2014, Defendants lodged the administrative record with the Court. At the request of the parties, the pending motions were stayed and all case deadlines were stricken. After repeated requests for further stays, on October 9, 2014, the Court denied the pending motions without prejudice. On August 6, 2015, the Court adopted the parties' seventh status report staying the action, but ordered that this case must either be voluntarily dismissed on or before November 7, 2015, or the parties must explain why the case should not be dismissed by the Court for lack of prosecution or otherwise resolved on the merits. On November 5, 2015, this case was dismissed by stipulation of the parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

## DISCUSSION

### A. Jurisdiction and Prevailing Party

#### 1. Jurisdiction

Defendants argue that because the case was dismissed pursuant to a stipulation under Rule 41(a)(1), the Court has no jurisdiction over this action and Plaintiffs may not seek EAJA fees. Defendants rely on *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). *Melkonyan* is a case involving review of an administrative law judge's decision in a social security case. *Id.* at 91-92. The plaintiff and the government agreed to remand the case for further proceedings and the district court entered an order of remand, without specifying under which provision of 42 U.S.C. § 405(g) the remand was based. The Supreme Court analyzed the relevant provisions and noted that the provision governing the remand would make a difference in the context of seeking EAJA fees. *Id.* at 97-100. The Supreme Court further noted:

> Indeed, it may be that the court treated the joint request for remand as a voluntary dismissal under Federal Rule of Civil Procedure 41(a), although the parties did not file a signed stipulation, as

required by the Rule. Because the record before us does not clearly indicate what the District Court intended by its disposition, we vacate the judgment and remand the matter to enable the District Court to clarify its order. If petitioner is correct that the court remanded the case under sentence six, the Secretary must return to District Court, at which time the court will enter a final judgment. Petitioner will be entitled to EAJA fees unless the Secretary's initial position was substantially justified, a question which was not addressed by the Court of Appeals. If, on the other hand, this was *not* a sentence six remand, it may be that petitioner is not entitled to EAJA fees at all. For example, if the court's order was, in effect, a dismissal under Rule 41(a), the District Court's jurisdiction over the case would have ended at that point, and petitioner would not have been a prevailing party "in [a] civil action." 28 U.S.C. § 2412(d)(1)(A). Under those circumstances, the Secretary would not return to the District Court and petitioner would not be eligible to receive EAJA fees.

*Id.* at 102-03 (emphasis in original).

The Court does not read this dictum from *Melkonyan* as suggesting that a district court is immediately divested jurisdiction to consider any matter relating to a case that has been resolved through a stipulated dismissal. Indeed, the Supreme Court has recognized that district courts "may consider collateral issues after an action is no longer pending," including where the action has been dismissed pursuant to Rule 41. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (permitting district courts to hear and determine motions for Rule 11 sanctions after a matter has been voluntarily dismissed). The Supreme Court "has indicated that motions for costs or attorney's fees are 'independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree'" and that thus " even 'years after the entry of a judgment on the merits' a federal court [can] consider an award of counsel fees." *Id.*

The relevance of a possible Rule 41(a) dismissal in *Melkonyan* was that under the circumstances of that case, if it was a Rule 41(a) dismissal then the plaintiff would not have been a prevailing party for purposes of the EAJA, not that the district court would then have lacked jurisdiction to award fees. *See Cohen v. Swacina*, 2009 WL 799430, at *1 (S.D. Fla. Mar. 24,

PAGE 5 – OPINION AND ORDER

2009); *Edwards ex rel. Edwards v. Barnhart*, 238 F. Supp. 2d 645, 651 (S.D.N.Y. 2003); *cf. Ruiz v. Comm'r of Soc. Sec.*, 189 F. App'x 112, 113 (3d Cir. 2006) (citing to *Melkonyan* and noting that because the dismissal was not a Rule 41(a) voluntary dismissal, the plaintiff was a prevailing party).

Additionally, after *Melkonyan*, circuits courts have held that, when parties voluntarily dismiss an action, a prevailing party may file for, and when appropriate receive, attorney's fees under the EAJA.[1] *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 531 F.3d 1367, 1371 (Fed. Cir. 2008); *Hoa Hong Van v. Barnhart*, 483 F.3d 600 (9th Cir. 2007); *Scafar Contracting, Inc. v. Sec'y of Labor*, 325 F.3d 422 (3d Cir. 2003); *Adamas v. Sec. & Exch. Comm'n*, 287 F.3d 183 (D.C. Cir. 2002); *Briseno v. Ashcroft*, 291 F.3d 377 (5th Cir. 2002); *Bryan v. Office of Personnel Mgmt.*, 165 F.3d 1315 (10th Cir. 1999). Defendants cite to no case holding to the contrary.

### 2.  Prevailing Party

Defendants also argue that Plaintiffs are not the "prevailing party" under the EAJA because the stipulated dismissal does not order any relief against any Defendant. Plaintiffs respond that they are the prevailing party because they obtained a preliminary injunction, which Plaintiffs argue changed the legal relationship of the parties and is sufficient to confer prevailing party status.

The Ninth Circuit has held that "[w]hile the EAJA contains no applicable definition of 'prevailing party,' we consider claimants prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties

---

[1] Courts are split on the question of at what point the EAJA's 30-day clock begins to run in cases involving consent judgments or voluntary dismissals, but not on whether a district court lacks jurisdiction to consider an EAJA application regardless of when it is filed. Here, there is no dispute regarding timeliness.

sought in bringing suit." *United States v. Real Prop. Known as 22249 Dolorosa St., Woodland Hills, Cal.*, 190 F.3d 977, 981 (9th Cir. 1999) (quotation marks and citation omitted). Plaintiff cites to *Richard S. v. Dep't of Dev. Svc. State of Cal.*, 317 F.3d 1080, 1089 (9th Cir. 2003) and *Williams v. Alioto*, 625 F.2d 845, 847 (9th Cir. 1980), to support the proposition that plaintiffs who have obtained a preliminary injunction are prevailing parties. These cases, however, predate the U.S. Supreme Court's decision in *Sole v. Wyner*, 551 U.S. 74 (2007), which held in reviewing fees available under 42 U.S.C. § 1988,[2] that where a plaintiff obtains a preliminary injunction but then fails to obtain a permanent injunction, that plaintiff has only an "ephemeral" victory and "has [won] a battle but los[t] the war ." *Id.* at 86 (quotations omitted) (alterations in original). The Supreme Court expressly noted that it was not reaching the issue of "whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." *Id.* The Supreme Court limited its holding to "only that a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under § 1988(b) if the merits of the case are ultimately decided against her." *Id.*

This case falls within the type of matter that the Supreme Court expressly did not reach in *Sole*. Here, there was no final decision on the merits after Plaintiffs succeeded in gaining a preliminary injunction. The Ninth Circuit has analyzed how a court should evaluate whether a plaintiff is a prevailing party when the plaintiff obtains a preliminary injunction and then the case is not resolved on the merits. In *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712 (9th Cir. 2013), a case analyzing fees under § 1988. the Ninth Circuit explained:

> [T]wo recurrent questions arise when making prevailing-party determinations in this context: First, is the court's preliminary

---

[2] Section 1988 similarly requires that to obtain fees, one must be the "prevailing party."

injunction ruling sufficiently "on the merits" to satisfy *Buckhannon* [*Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)]'s "judicial imprimatur" requirement? And second, has the plaintiff obtained relief sufficiently enduring to satisfy the "material alteration of the parties' legal relationship" requirement?

We begin with the first question, to which the answer, at least on the facts of this case, is clear. Several circuits, including ours, have held that a preliminary injunction satisfies the judicial imprimatur requirement if it is based on a finding that the plaintiff has shown a likelihood of success on the merits. When confronted with those circumstances in *Watson v. County of Riverside*, 300 F.3d 1092 (9th Cir. 2002), we held that "[a] preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary to satisfy *Buckhannon.*" *Id.* at 1096; *accord Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1355–56 (11th Cir. 2009); *Dearmore v. City of Garland*, 519 F.3d 517, 523–24 (5th Cir. 2008).

\* \* \*

We turn now to the second question, which involves determining whether the relief obtained materially altered the parties' legal relationship. No one disputes that, at least for the time it remains in effect, a preliminary injunction normally satisfies this requirement. A material alteration of the parties' legal relationship occurs when "the plaintiff can force the defendant to do something he otherwise would not have to do." *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000). That is typically the whole point of an injunction, which is why in the usual case injunctive relief "work[s] the requisite material alteration in the parties' relationship." *Lefemine v. Wideman*, —— U.S. ——, 133 S.Ct. 9, 11 (2012) (per curiam).

\* \* \*

But that does not end the inquiry, for the preliminary injunction issued here was intended (as in most cases) to afford only temporary relief pending final resolution of the case.

Precisely because the relief afforded by a preliminary injunction may be undone at the conclusion of the case, some inquiry into events post-dating the injunction's issuance will generally be necessary. For example, a plaintiff who succeeds at the preliminary injunction stage but loses on the merits after the case is litigated to final judgment is not a prevailing party under § 1988; in those

PAGE 8 – OPINION AND ORDER

> circumstances, she secures only an "ephemeral" victory and gains
> no "enduring" change in the legal relationship of the parties.
> *Sole*, 551 U.S. at 86. Still, there may be circumstances in which a
> preliminary injunction results in sufficiently enduring change to
> warrant an award of fees, even in the absence of a final judgment
> on the merits.

*Id.* at 715-17.

Here, both questions are answered in the affirmative. First, in granting the preliminary

injunction, the Court found that there were serious questions going to the merits of Plaintiffs'

claim that Defendants violated the APA. *See Turner v. Vilsack*, 2013 WL 6074114, at *4 (D. Or.

Nov. 18, 2013). The Court also found that, although it was a closer question, there were serious

questions whether Defendants violated Plaintiffs' due process rights. *Id.* at *5. Thus, the granting

of the preliminary injunction was sufficiently on the merits to have the necessary "judicial

imprimatur." Second, the preliminary injunction did materially alter the parties' legal

relationship. Defendants were enjoined from selling Jandina.

Finally, a review of the post-injunction conduct of the parties demonstrates that Plaintiffs

are the prevailing party. Plaintiffs did not lose on the merits. Plaintiffs agreed to dismiss the

action and Defendants rescinded the notice of default and election to foreclose and agreed to

operate in good faith toward a potential transfer of the property to Community and Shelter

Assistance Corp or other options to keep the property within the USDA multifamily housing

program. Dkt. 44.

## B.  Reasonableness of Fees Requested

Defendants object to the fees requested for attorney Gideon Anders. Defendants argue

that Mr. Anders performed most of the substantive work on the case and yet did not appear in the

case, is not licensed in Oregon, and did not seek admission *pro hac vice*, and is thus ineligible for

fees under Local Rule 83-1(a).[3] Defendants further object that Mr. Anders' requested rate of $740 is unreasonably high, he excessively billed for drafting the complaint, he failed adequately to document his time, and Plaintiffs fail to demonstrate that Mr. Anders' expertise was required. Defendants also object to the fees requested for Plaintiffs' three other counsel as duplicative, insufficiently documented, and improperly include time spent on Plaintiffs' motions to amend their complaint and for class certification.

### 1.  Mr. Anders' Eligibility

Mr. Anders is an attorney employed by the National Housing Law Project in San Francisco. Dkt. 45-4 at 2. Mr. Anders assisted Plaintiffs' counsel in developing the case, developing the litigation strategy, and drafting pleadings. Mr. Anders agreed to assist on the condition that he would not have to communicate with individual plaintiffs, sign any pleadings, appear in court, or communicate with Defendants' counsel. Dkt. 52-1 at 3.

Defendants argue that because Mr. Anders was not generally or specially admitted to practice before this Court, Plaintiffs cannot obtain fees for Mr. Anders' time spent in this case. Plaintiffs rely on *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815 (9th Cir. 2011), in arguing awarding fees for Mr. Anders' time is appropriate in this case. The Court agrees with Plaintiffs that under *Winterrowd*, fees may be awarded for Mr. Anders' time.

*Winterrowd* discussed two independent ways in which a plaintiff may request fees for the time spent by an out-of-state attorney who is not generally or specially admitted to practice before the relevant court[4]: (1) "if the attorney at issue would have certainly been permitted to

---

[3] Local Rule 83-1(a) states: "Only attorneys generally or specially admitted pursuant to this rule may practice in the district and bankruptcy courts of the District of Oregon."

[4] *Winterrowd* did not involve the circumstance where a law firm has attorneys admitted in the state and attorneys not admitted in the state and both types of attorneys work on a single case.

appear *pro hac vice* as a matter of course had he or she applied"; and (2) if the attorney's

"conduct did not rise to the level of 'appearing' before the district court." *Id.* at 822-23. The

Court finds that Mr. Anders would have certainly been admitted *pro hac vice* if he had applied.

The Court easily reaches this conclusion because Mr. Anders was admitted *pro hac vice* in a

different case before this Court on March 6, 2015, in *Brown v. Vilsack*, Case No. 1:14-cv-1739-

PA. Accordingly, the Court need not reach whether Mr. Anders can be deemed to have

"appeared" before the Court.

### 2. Mr. Anders' Hourly Rate

In determining fee awards under the EAJA, in contrast to determining fees under 42

U.S.C. § 1988, attorney fees are capped by Congress to a statutory amount. *See Sorenson v.*

*Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001) (discussing the difference between Section 1988 and

EAJA fees). Thus, the premise in a case involving EAJA fees is that the statutory maximum is

sufficient. The EAJA statutory rate may, however, be adjusted upward to account for special

factors. The Ninth Circuit has established a three-part test to determine whether special factors

warrant an upward departure from the EAJA statutory maximum: (1) "the attorney must possess

distinctive knowledge and skills developed through a practice specialty;" (2) "those distinctive

skills must be needed in the litigation;" and (3) "those skills must not be available elsewhere at

the statutory rate." *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991); *see also Nadarajah v.*

*Holder*, 569 F.3d 906, 912 (9th Cir. 2009).

Defendants argue that Plaintiffs fail to show that Mr. Anders' specialized skill was

needed to litigate this matter or warrant a fee enhancement. Defendants further argue that even if

an enhanced rate is warranted for Mr. Anders, his requested hourly rate of $740 is unreasonable

---

The Ninth Circuit noted that under those circumstances, the law firm would be able to seek fees
for the out-of-state attorneys. 556 F.3d at 822.

and his hourly rate should be considered based on prevailing Oregon rates, and not San Francisco rates as put forth by Mr. Anders.

Plaintiffs respond that this case involved a complicated part of housing law, the RD program, and that Mr. Anders is the leading authority on the RD program. Plaintiffs argue that $740 per hour is a reasonable rate for Mr. Anders, given his experience and expertise. Plaintiffs cite to no case, however, holding that litigation relating to the RD program is sufficiently complex that it requires highly specialized counsel, such as may occur in patent or environmental litigation. Plaintiffs cite only to the testimony of the Oregon housing attorneys that they did not feel qualified to litigate the case without an attorney with expertise in the RD program.

The complaint in this case was 11 pages, of which approximately five pages contained allegations specific to the RD program and Defendants' alleged failures to follow proper procedures in proceeding with Jandina's foreclosure. Those pages include a recitation of the facts relating to the information provided and procedures followed by the USDA in managing Jandina and deciding to foreclose on the property, and allegations that such conduct failed to follow the USDA's directives. The complaint then asserts straightforward claims for violation of the APA and Due Process Clause. The memoranda filed in support of the motion for a preliminary injunction totaled 30 pages, of which approximately 15 pages detailed Defendants' alleged failure to follow the procedures set forth in the USDA's relevant handbook and other alleged violations. The arguments in this case involved a fairly straightforward application of the relevant statutes and the USDA handbook governing the RD program.

The Court agrees that Mr. Anders has specialized knowledge and expertise in the RD program. But the Court also is persuaded by the analyses of cases holding that such expertise

does not warrant EAJA fee enhancement. As explained by the U.S. Court of Appeals for the

District of Columbia Circuit:

> [A]n attorney cannot be awarded enhanced fees under the 'special factor' exception based solely on expertise the lawyer acquired through practice in a specific area of administrative law. As we stated in *F.J. Vollmer Co. v. Magaw,* 102 F.3d 591, 598 (D.C. Cir. 1996), while "lawyers practicing administrative law typically develop expertise in a particular regulated industry, whether energy, communications, railroads, or firearms . . . they usually gain this expertise from experience, not from the specialized training justifying fee enhancement." Emphasizing that nothing in the text or legislative history of EAJA suggests that Congress intended to make "all lawyers practicing administrative law in technical fields" eligible for a fee enhancement, we concluded that "expertise acquired through practice" was not a "special factor" that could warrant an enhanced fee.

*Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 950-51 (D.C. Cir. 2005); *see also In re

Sealed Case 00–5116*, 254 F.3d 233, 236 (D.C. Cir. 2001) ("Although federal election law

involves a complex statutory and regulatory framework, the field is not beyond the grasp of a

competent practicing attorney with access to a law library and the other accoutrements of modern

legal practice.") (quotation marks omitted). Accordingly, the Court declines to award an

enhanced EAJA hourly rate for any of Plaintiff's counsel, including Mr. Anders.

### 3. Objections Regarding Time Billed

Defendants object to the request for attorney's fees for time spent on the motion to certify

the class, motion for leave to file an amended complaint, and review of the administrative record,

because that time was spent after the preliminary injunction was granted and is therefore not

relevant to the issue on which Plaintiffs prevailed. The Court disagrees. Plaintiffs are deemed a

prevailing party because they obtained judicial order in their favor that materially altered the

parties' relationship (the preliminary injunction), with consideration of the ultimate outcome of

the case and the fact that Plaintiffs obtained Defendants' agreement to forestall selling Jandina

and engage in best efforts to keep Jandina within the USDA RD program. Plaintiffs' continued prosecution of this case by filing their motion to certify the class, moving to amend the complaint, and reviewing the administrative record was relevant to achieving their ultimate success.

Defendants also raise a number of objections regarding specific time entries of Mr. Anders, Ms. Leslea Smith, and Mr. Michael Pijanowski as being excessive, duplicative, improperly documented, or otherwise unreasonable. Plaintiffs concede that 0.1 hours of Mr. Pijanowski's time and 2.5 hours of Mr. Anders' time was improperly requested. Plaintiffs also provide explanations and further detail for the remaining disputed entries, and note that they have already reduced requested time to compensate for any possible unreasonable duplication of effort. The Court has reviewed Defendants remaining objections to the specific time entries that were not conceded by Plaintiffs and finds them to be without merit. Accordingly, the Court reduces the requested time for Mr. Pijanowski by 0.1 hours and Mr. Anders by 2.5 hours, and makes no further reductions in the amount of time for which compensation is requested.

## C.  Calculation of Attorney's Fees and Costs Awarded

The Court awards EAJA attorney's fees at the statutory maximum hourly rate, adjusted for increases in the cost of living, of $190.28 for time spent in 2015, $190.06 for time spent in 2014, and $187.02 for time spent in 2013. Accordingly, the award per attorney is as follows:

| | | |
|---|---|---|
| Mr. Anders: | 63.7 hours in 2013 x $187.02 = | $11,913.17 |
| | 11.62 hours in 2014 x $190.06 = | $2,208.50 |
| | 4.2 hours in 2015 x $190.28 = | $799.18 |
| | **TOTAL for Mr. Anders:** | **$14,920.85** |

| | | |
|---|---|---|
| Mr. Johnson | 36.1 hours in 2013 x $187.02 = | $6,751.42 |
| | 2.8 hours in 2014 x $190.06 = | $532.17 |
| | 1.2 hours in 2015 x $190.28 = | $228.34 |
| | **TOTAL for Mr. Johnson:** | **$7,511.93** |
| Mr. Pijanowski: | 83.4 hours in 2013 x $187.02 = | $15,597.47 |
| | 22.1 hours in 2014 x $190.06 = | $4,200.33 |
| | 6.3 hours in 2015 x $190.28 = | $1,198.76 |
| | **TOTAL for Mr. Pijanowski:** | **$20,996.56** |
| Ms. Smith: | 64.9 hours in 2013 x $187.02 = | $12,137.60 |
| | 27.0 hours in 2014 x $190.06 = | $5,131.62 |
| | 1.1 hours in 2015 x $190.28 = | $209.31 |
| | **TOTAL for Ms. Smith:** | **$17,478.53** |
| | **TOTAL ATTORNEY'S FEES:** | **$60,907.87** |

## CONCLUSION

Plaintiffs' application for fees and expenses (Dkt. 45) is GRANTED IN PART. Plaintiffs are awarded $60,907.87 in attorney's fees and $625.24 in costs, for a total award of $61,533.11.

**IT IS SO ORDERED**.

DATED this 14th day of March, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge